**J.S. SAMLAND, et al., Respondents,**

**v.**

**J. WHITE TRANSPORTATION CO., INC., et al., Appellants.**

**No. WD 34646.**

Missouri Court of Appeals,
Western District.

July 10, 1984.

As modified July 31, 1984.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
July 31, 1984.

James Wheeler, Keytesville, D. Eric Sowers, St. Charles, for J. White.

Eugene B. Overhoff, Cuba, for Metro Inv.

Edward Bruce Nangle, Clayton, for J.S. Samland.

Before SOMERVILLE, P.J., and NUGENT and LOWENSTEIN, JJ.

NUGENT, Judge.

Defendant J. White Transportation, Inc., appeals from order sustaining plaintiff J.S. Samland's challenge to the jurisdiction of the court to proceed further in the case. The plaintiff's challenge was based upon the earlier joint, voluntary dismissals without prejudice by plaintiff of his petition, by defendant of its counterclaim and by an additional party plaintiff's dismissal of its counterclaim and cross-claims. Rules 67.01 and 67.04.[1] We affirm the judgment of the trial court.

In December of 1979, attorney Nangle, on behalf of plaintiff seller, J.S. Samland, filed a petition to rescind a contract for the

---

1. Missouri Supreme Court Rules of Civil Procedure.

sale of a farm. Plaintiff alleged in his petition that the contract had been entered into in March of 1979, and that the defendant buyer, J. White Transportation, Inc., (hereinafter White, Inc.) had committed material breaches of the provisions of the contract. Attorney Sower, on behalf of White, Inc., filed an answer and counterclaimed for specific performance of the contract.

In December, 1980, the trial court sustained defendant's motion to join Metro Investment Corp. as a necessary party plaintiff. Defendant made claim against Metro but we have no record as to the nature of that claim. Metro moved in January of 1982 to join as necessary parties Jack Greig individually and Jack Greig, d/b/a Greig and Co., and John Charles White and Lois Lavern White, individually and as trustees of the assets of White, Inc. On March 2, 1982, the court sustained Metro's motion, and attorney La Driere filed Metro's counterclaim against White, Inc., a cross-claim against Jack Greig, d/b/a Greig and Co.; and a cross-claim against John and Lois White, individually and as trustees of the assets of White, Inc. Metro alleged that the land involved herein had been deeded to Metro by Samland in March of 1980, and that Metro was thereafter the legal and equitable owner. Metro prayed for damages from the above parties for the pillaging and plundering of the farm.

On July 19, 1982, a settlement and release was executed and signed by J.S. Samland and Jack Greig as President of White, Inc. It provided that the contract for the sale of the farm was to be rescinded and also provided the following:

The consideration granted and mutually given by each party for their [sic] execution of this settlement and agreement is their concurrent dismissal by each said party of their [sic] respective claims filed in the above cause of action; upon the execution of this settlement and release the plaintiff will dismiss without prejudice his petition against defendant, and concurrent defendant will cause to be dismissed, without prejudice, its counter claim and lis pendens against plaintiff.

On August 4, 1982, attorney Overhoff entered his appearance for Metro and for White, Inc. On that same day, a stipulation for dismissal, without prejudice, was filed and signed by Mr. Overhoff on behalf of both White, Inc., and plaintiff-counterclaimant Metro Investment and by Mr. Nangle on behalf of J.S. Samland. The stipulation dismissed all claims against all parties, without prejudice. On August 25, the settlement and release was filed.

On January 3, 1983, Mr. Sower filed a motion to set aside the settlement and release. It alleged that Jack Greig had no authority to sign the release for White, Inc., or, in the alternative, that his signature on the document was procured by fraud and duress. That motion was noticed up for hearing on January 10, 1983.

At the January 10 hearing considerable confusion as to its purpose reigned. Mr. Nangle, appearing on behalf of the plaintiff Samland, and Mr. Overhoff, appearing on behalf of Metro, Inc., objected to the court's jurisdiction to hear any evidence as the case had been voluntarily dismissed as of August 4, 1982. The hearing was held subject to the jurisdictional objection of the plaintiff.

Mr. Sower, representing White, Inc., indicated that he was prepared to address the validity of the dismissal and the validity of the settlement and release. He apparently thought, however, that his evidence in support of his motion to set aside the release and settlement would also resolve the issue of the authority of Mr. Overhoff to act as attorney for White, Inc., and, therefore, the validity of the dismissal. Thus, the evidence produced by White, Inc., at the hearing concerned the authority of Mr. Greig to sign the settlement and release and the duress under which he signed it on July 19, 1982. Mr. White and Mr. Greig testified that Mr. Greig had owned no stock in White, Inc., since November 4, 1981, and that Mr. Greig had been removed as a member of the board of directors and removed from all offices which he had held in

White, Inc., on July 14, 1982. Jack Greig also testified that he had signed the settlement and release under threats of bodily harm.

Although Mr. Sower contended in conference that Mr. Overhoff did not have authority to represent White, Inc., absolutely no evidence was adduced concerning this contention. On the other hand, occasional allusions in the testimony to the interest of one Kingsley in the ownership of the capital stock of White, Inc., tend to indicate that for a time at least the ownership and control of that corporation was in the hands of Kingsley and that, during that time, a settlement was reached and the respective claims dismissed. In any event, shortly after Mr. Greig at Mr. Kingsley's direction signed "some documents" on July 19, Mr. Overhoff entered his appearance for opposing parties on August 4, 1982. At best, the record is murky.

After the January 10 hearing, the court allowed the parties time to file suggestions in support of and in opposition to plaintiff's motion that the court lacked jurisdiction to proceed in the case. On February 23, 1983, the court filed a memorandum opinion in which it found that it had no jurisdiction because the record disclosed that the parties to the suit had dismissed their pleadings. The court based its finding in part upon its apparent conclusion, despite defendant's evidence, that Mr. Overhoff had authority to enter his appearance for defendant White, Inc., and to file the voluntary dismissal. In its memorandum opinion, the court indicated that further argument would be allowed on the motion to dismiss before ruling was made on February 26, 1983.

A docket entry was also made on February 23, 1983, which reads as follows:

Comes Mr. Nangle plaintiff. Mr. Overhauff appears for Metro-Investment. Mr. Wheeler appears for J. White Transportation Inc. Mr. Sowers appears for J. White Transportation, Inc. Motion contesting jurisdiction of this court is sustained and costs are assessed to defendants. J. Richard Webber.

On February 24, 1983, the court permitted further argument on plaintiff's motion to dismiss. The parties said they had no further argument, but Mr. Wheeler, on behalf of defendant White, Inc., commented,

We do not seriously question the party's right to dismiss a lawsuit, but we say that B cannot dismiss A's lawsuit, and in this case the people who seek to dismiss the lawsuit were not the parties—the parties had no authority to act for White Transportation Company. No authority whatsoever. We do not think they had more legal effect than a forged check would have. We just think they do not have authority to do it.

The judge let stand his February 23 order sustaining the plaintiff's motion challenging jurisdiction.

White's sole point on appeal is that

[t]he trial court erred in ruling it had no jurisdiction to hear and determine the motion of appellant, J. White Transportation, Inc., to set aside the dismissal of its cause of action when it was alleged, and there was strong evidence that the dismissal was not the act of J. White Transportation, Inc., was not authorized by J. White Transportation, Inc., and was the product of fraud and threats of bodily harm.

Defendant apparently assumes that his motion to set aside the settlement and release encompasses a motion to set aside the dismissal. Plaintiff correctly points out that nothing in defendant's motion to set aside the settlement and release even vaguely suggests or requests that the stipulation for dismissal be set aside.

In his memorandum opinion, the trial judge wrote, "It may well be that the dismissal was procured by fraud or may be subject to be set aside on some other theory." Nonetheless, the trial judge held that it did not have jurisdiction from September 4 forward. In sustaining plaintiff's motion challenging jurisdiction, the court held that it lacked "jurisdiction in the case after the expiration of thirty days from the date of the filing [on August 4, 1982,] of the stipu-

lation of dismissal in the case." The trial judge appears to have based its decision on the fact that the prima facie assumption that an attorney of record is authorized to act on behalf of his client, was not rebutted by the defendant within thirty days after the dismissal was filed.

Accordingly, the questions we must decide are: First: was the dismissal of defendant's counterclaim authorized? The answer is that, in light (or lack thereof) of defendant's evidence, the trial court correctly found that the defendant did not overcome the prima facie presumption that Mr. Overhoff as attorney of record acted with authority in executing and filing the stipulation of dismissal. Second: What was the effect of the voluntary dismissals of plaintiff, defendant and plaintiff-counterclaimant-cross-claimant Metro Investment filed on August 4, 1982? The answer is quite simple: Once a party dismisses his petition, counterclaim or cross-claim without prejudice, and no other such claims remain in the case, the trial court's jurisdiction over the case ends.

I.

No evidence at all was offered by defendant on the circumstances that led to attorney Overhoff's entry of appearance on August 4, 1982, for White, Inc., the antagonist of his client Metro Investment. Defendant chiefly relied upon the testimony of Mr. White and Mr. Greig. They both testified that they had dealt with Mr. Kingsley and that they had been threatened. Neither said who had threatened them or what the purpose of such threats was.

Crucial to the issue of the validity of the July 19 settlement and release was the question of when Jack Greig had been removed as an officer of White, Inc. Messrs. White and Greig asserted that it was at a corporate board meeting held on July 14, but their attorney, Willard Reine, and his secretary were unable to say that the minutes of the meeting of the corporation's board of directors dated July 14, 1982, had been prepared in July or any time shortly after July. Mr. Reine had no information

in his files and records to pinpoint the date on which Mr. White came to his office to have the minutes prepared for the "meetings" he held with himself as sole shareholder, sole director, president, secretary, and treasurer of White, Inc. Mr. White said that the "meetings" he held with himself occurred at 10:00 a.m. on July 14 at Richwoods, Missouri, where Mr. White happened to be that day, far removed from his attorney.

The credibility of Mr. White and Mr. Greig was sharply challenged throughout the hearing by Mr. Nangle, plaintiff's counsel, and Mr. Overhoff appearing for Metro Investment. Mr. Overhoff was never called by defendant and asked to explain by what authority he appeared in August for defendant. Development of many facts was substantially hampered by defendant's witnesses inability to recall many facts throughout cross-examination.

Defendant made no attempt at the hearing to show that on August 4, 1982, Mr. Sowers was still the attorney of record for defendant and that he had not withdrawn. The record is silent on that matter. No witness testified that Mr. Overhoff was not authorized by defendant White, Inc., to enter his appearance for defendant. Nor did defendant attempt to show that the settlement and release of July 19 or the August 4 dismissal of defendant's claims was unfair or that the defendant still had or asserted a viable claim or still had unsatisfied substantial rights against anyone. Finally, defendant made no attempt to show that what the record seems to indicate—ownership and control of White, Inc., by Kingsley or Metro Investment at the time—was not a fact. The record, although inadequate to establish as a fact that such ownership and control had passed to Metro or its nominee during the critical time, raises a question about those matters which required clarification or rebuttal if not true.

An attorney of record may not bind his client to a settlement without express authority; the mere fact of his employment does not give an attorney implied authority to settle his client's case. *Leffler v. Bi-State Development Agency*, 612

S.W.2d 835, 836–37 (Mo.App.1981); *Aetna Casualty & Surety Co. v. Traders National Bank & Trust Co.,* 514 S.W.2d 860, 866 (Mo.App.1974); *Kahn v. Brunswick-Balke-Collender Co.,* 156 S.W.2d 40, 43 (Mo.App. 1941). But "the authority of an attorney of record to perform an act for his client is presumed, prima facie at least, and the burden of showing his want of authority rests on the party who questions it unless such authority is denied by the client." *Id.* Moreover, "the compromise of a pending suit by an attorney having apparent authority, will be binding upon his client, unless it be so unfair as to put the other party upon inquiry as to the authority, or imply fraud." *Id.; Allen v. Fewel,* 337 Mo. 955, 87 S.W.2d 142, 145 (1935); *Black v. Rogers,* 75 Mo. 441, 448 (1882). In the present case, not only did the defendant fail to show in what way the settlement was unfair, it failed to make any attempt to show even the prima facie existence of a remaining claim or denial of substantial rights. Defendant failed to show lack of authority in Mr. Overhoff to represent the corporation and its shareholders, whoever they were at the time, and, more specifically, failed to show that attorney's want of authority to execute and file the stipulation. If the defendant corporation in fact did not authorize Mr. Overhoff to represent it in entering into either the stipulation of dismissal or the settlement and release, one would expect its true and fully authorized attorneys of record to step forward and assert their authority and perhaps present some explanation of the entry of appearance of any other attorney. Absent such an explanation, the court was entitled to hear a direct challenge by defendant of Mr. Overhoff's appearance in the form of testimony from him on the call of counsel then appearing for defendant. Such explanations were neither offered nor demanded by defendant, although defense counsel charged plaintiff, Metro and their attorneys with fraud.

The trial court was, therefore justified in concluding as it must have that defendant had not met its burden of showing Mr. Overhoff's lack of authority.

## II.

 Missouri Supreme Court Rule 67.-01 provides in part that "[a] civil action may be dismissed by the plaintiff without prejudice without order of court any time prior to the introduction of evidence at the trial." The Supreme Court has interpreted this part of the rule in *Garrison v. Jones,* 557 S.W.2d 247 (Mo.1977) (en banc) (at 250), to mean that "dismissal by plaintiff prior to the introduction of evidence does not require a court order to be effective." [2] *First National Bank of Colorado Springs v. Mark IV Co.,* 591 S.W.2d 63, 68 (Mo.App. 1979). Once a plaintiff voluntarily dismisses his action, nothing remains before the court upon which it can act; even an order reinstating the case on the trial docket at the plaintiff's request is a nullity. *Emigh Engineering Co., Inc. v. Rickhoff,* 605 S.W.2d 173, 174 (Mo.App.1980). The legal situation is as though the suit had never been brought. No steps can be taken, and any step attempted in the dismissed suit is a nullity. *Bell v. Kitt,* 655 S.W.2d 881, 883 (Mo.App.1983), following *Emigh Engineering, supra,* and *Bryan v. Smith,* 174 F.2d 212, (7th Cir.1949). This rule applies even where, before plaintiff's voluntary dismissal without prejudice, the defendant has moved to dismiss plaintiff's action with prejudice because when the plaintiff files his memorandum of dismissal no court order is needed to give it effect—the case is automatically, ipso facto, dismissed. *Rosenfeld v. Telcom Engineering, Inc.,* 619 S.W.2d 811, 813–14 (Mo.App.1981); *Norris v. Johnson,* 599 S.W.2d 90, 91 (Mo.App. 1980).

In this case plaintiff Samland voluntarily dismissed its case against the defendant, the defendant voluntarily dismissed its case (the counterclaim) against the plaintiff and its case against the additional plaintiff, Metro Investment, and Metro voluntarily dismissed its case (the counterclaim) against defendant White, Inc., and its

**2.** No counterclaim was filed in that case. Rule 67.05 provides in part that "[n]o dismissal ... of a plaintiff's civil action in which a counterclaim or cross-claim has been filed shall operate to dismiss ... such counterclaim or cross-claim."

cross-claim against Greig and the Whites. That joint dismissal disposed of all claims on file in the lawsuit. Needless to say, in this context and under Rule 67.01, the counterclaims and the cross-claim were the equivalent of plaintiff's petition. The counterclaiming and cross-claiming parties, of course, have the same right to dispose of their causes of actions the plaintiff has to dismiss his, that is, by voluntary dismissals without court orders before evidence is introduced at trial. Rule 67.04. Once all such claims have been so dismissed, the case is over and nothing remains before the court upon which it can act.

Thus, the trial court was correct in ruling that it no longer had jurisdiction to consider any motion in the closed case, but the court was mistaken in believing that it lost jurisdiction on September 4. It lost all authority to act on August 4, 1982, when the joint dismissals were filed. Consequently, at no time after that did it have the authority in that dismissed case to take any action on defendant's motion.

For the foregoing reasons, we affirm the judgment of the trial court.

All concur.