**E.A.U., INC., Plaintiff–Respondent,**

v.

**R. WEBBE CORPORATION, and American Insurance Company, Defendants–Appellants.**

Nos. 54910, 54925.

Missouri Court of Appeals,
Eastern District,
Division Three.

July 31, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 29, 1990.

Application to Transfer Denied
Nov. 20, 1990.

Kenneth V. Byrne, St. Louis, for defendants-appellants.

Robert S. Adler, St. Louis, for plaintiff-respondent.

SATZ, Presiding Judge.

This is a breach of contract action. Plaintiff, E.A.U., Inc. (EAU) is a supplier. Defendant, R. Webbe Corp. (Webbe), is a general contractor. EAU agreed to sell to Webbe parts and materials for a greenhouse system to be installed in the now newly constructed Hazelwood City Hall—Police Complex. EAU sued Webbe for breach of contract, alleging Webbe refused to pay for the materials provided by EAU.

EAU also sued another defendant, American Insurance Company (American), a surety which issued a labor and materials payment bond covering Webbe's general contract for the Hazelwood project. The claim was based upon American's alleged liability for Webbe's contractual debt to EAU.

The trial took place in St. Louis County. The trial court entered judgment on a jury verdict for EAU and against both Webbe and American. Webbe and American appeal. We have consolidated these appeals. We reverse and remand.

## I PROCEDURAL ISSUES

### A. Theory Of The Case—Submissibility

On appeal, Webbe argues, among other things, that EAU failed to make a submissible case. As we understand Webbe's brief, it bases this argument on the assumption that the contract in issue consists solely of its purchase order to EAU.

However, in its petition, EAU alleges a contract between it and Webbe based upon the purchase order from Webbe with one alleged modification of that order. But, from the partial record before us, it appears that EAU tried its claim as if the contract consisted of the purchase order with two modifications, rather than one modification. And, on appeal, as we understand its brief, EAU assumes the contract consists of the purchase order and two modifications.

If the contract between EAU and Webbe is the purchase order alone or with one modification, EAU failed to make a submissible case. If the contract is the purchase order with two modifications, EAU made a submissible case.

The contract EAU chose to submit to the jury would normally be reflected in its proffered verdict directing instruction. The trial transcript before us shows EAU proffered a verdict directing instruction which, apparently, referred to some modification of the purchase order as the contract. This instruction was refused by the trial court and was not made part of the original record on appeal.

We ordered the parties to file copies of all instructions—given, proffered and refused—certified by the clerk of the court or stipulated to by the parties. Apparently, the originals of these instructions are missing, and the parties "were unable to reconstruct" the "proffered but refused" instructions. They did stipulate that EAU's verdict directing instruction refused by the court "concerned a modification to the contract". This, obviously, does not tell us the specific "modification" proffered by EAU. On this record, for the reasons following, we reverse and remand this cause.

### B. Motions To Supplement The Record On Appeal

▪ Prior to our order, both Webbe and EAU filed motions to supplement the record. Webbe seeks to supplement the legal file with the jury instructions and with the case file from earlier litigation between EAU and Webbe in the St. Louis City Circuit Court. As required by Rule 84.04(e), the instructions to which Webbe objects are set forth in full in the argument portion of Webbe's brief and are the same instructions the parties have now stipulated to. EAU proffered the case file from the City Circuit Court as an exhibit at trial. We therefore grant Webbe's motion.

▪ EAU seeks to have certain correspondence, as well as an interoffice memorandum by counsel for EAU, made part of the record. We deny EAU's motion with respect to the interoffice memorandum. There is no indication this document was before the trial court. EAU's motion is granted, however, with respect to the three

letters in its proposed supplemental legal file.

EAU offered two of these letters, one dated September 30, 1985, from counsel for Webbe to counsel for EAU and another dated March 29, 1985, from counsel for Webbe to EAU, as exhibits at trial. Webbe did not object to the admission of either exhibit. Webbe does not object to the inclusion of the remaining letter, dated May 30, 1985, from counsel for EAU to counsel for Webbe, on the grounds that it was not before the trial court. This is understandable since the May 30 letter from counsel for EAU to counsel for Webbe concerns the same subject as the admitted September 30 letter from counsel for Webbe to counsel for EAU: the parties' agreement to try their entire dispute in the St. Louis County Circuit Court. Both the May 30 letter from counsel for EAU to counsel for Webbe and the September 30 response from counsel for Webbe are reproduced in the attached Appendix.

### C. Jurisdiction Of The Trial Court

■ Webbe and American argue that the trial court lacked jurisdiction over EAU's present action, which EAU filed in the Circuit Court for St. Louis County. Prior to the commencement of the present suit, Webbe had brought a replevin action in the St. Louis City Circuit Court, seeking possession of materials which EAU had ordered for the Hazelwood project. EAU had filed a counterclaim against Webbe for breach of contract in the City case. Webbe and American argue that the action which EAU subsequently brought in the St. Louis County Court was barred because it was a compulsory counterclaim in the city case and because the pendency of the counterclaim which EAU actually filed in the City suit required abatement of EAU's claim in the County Circuit Court. We disagree.

The previously filed City litigation between EAU and Webbe did not affect the jurisdiction of the County Circuit Court over the action which EAU subsequently filed there because EAU and Webbe had agreed to a voluntary mutual dismissal of all claims in the City case. EAU filed its petition in the County Circuit Court on April 8, 1985. The following month, counsel for EAU wrote a letter to counsel for Webbe confirming the parties' agreement that:

> [Webbe] would take no further action to obtain a default judgment against E.A.U., Inc. [in the city] cause without prior notice to [EAU counsel's] firm. In the interim you [counsel for Webbe] will review the file to determine whether my [EAU's counsel's] suggestion of a mutual dismissal without prejudice by all parties of the cause of action pending in the City of St. Louis would be an acceptable method of proceeding in this matter.

In September 1985, counsel for Webbe wrote counsel for EAU to express his agreement "that the most expedient manner for handling this entire dispute would be in the other case which is currently pending in St. Louis County." We interpret this letter as Webbe's agreement to EAU's suggestion of a mutual dismissal without prejudice of the City case.

■ Although the parties, evidently, never formally dismissed their suit in the City Circuit Court, we treat the parties' agreement to a voluntary mutual dismissal without prejudice of their respective claims in the City case as if it had actually been performed. To do otherwise would permit counsel for Webbe, an officer of the court, to use the process of this Court to avoid compliance with his agreement with counsel for EAU, also an officer of the court.

■ Petitions and counterclaims may be voluntarily dismissed without prejudice and without leave at any time prior to the introduction of evidence. Rules 67.01; 67.-04. After a voluntary dismissal of either a petition or a counterclaim, nothing remains before the court regarding either the petition or the counterclaim. *McHenry v. Brown*, 388 S.W.2d 797, 807 (Mo.1965); *Samland v. J. White Transportation, Co.*, 675 S.W.2d 92, 96 (Mo.App.1984). "The legal situation [following voluntary dismissal] is as though the suit had never been brought." *Samland*, 675 S.W.2d at 96. Having found the parties' agreement to mutual dismissal without prejudice of their

respective claims in the City case to be such a dismissal, we, in turn, find the proceedings between these parties in the City Circuit Court as a nullity, with no effect upon the jurisdiction of the County Circuit Court.

Moreover, even if EAU and Webbe had not agreed to a mutual dismissal of their claims in the City case, it is extremely doubtful that either compulsory counterclaim or abatement principles would have barred EAU's action in the County Circuit Court.

"An implicit requisite to the compulsory counterclaim rule [55.32(a) [1]] ... is that the claim to be asserted as a counterclaim be 'matured' at the time of serving the pleading." *Knight v. M.H. Siegfried Real Estate, Inc.*, 647 S.W.2d 811, 813 (Mo.App. 1982). From the record, it appears that EAU's counterclaim against Webbe in the City case had not matured by the time that process was served on EAU.

■ In addition, the prior pending action doctrine, one form of abatement, provides that " 'where two actions involving the same subject matter between the same parties are brought in courts of concurrent jurisdiction, the court in which service of process is first obtained acquires exclusive jurisdiction and may dispose of the entire controversy without interference from the other.' " *State ex rel. J.E. Dunn, Jr. & Assoc., Inc. v. Schoenlaub*, 668 S.W.2d 72, 74 (Mo. banc 1984). However, an abatement defense is waived unless pleaded in the defendant's answer: the defense may not be raised by way of subsequent motion. *State ex rel. Kansas City v. Harris*, 357 Mo. 1166, 212 S.W.2d 733, 735 (1948); *State ex rel. Dunn v. Cowan*, 231 Mo.App. 717, 105 S.W.2d 1009, 1011 (1937).

Webbe and American waived the defense of abatement here. They did not raise this issue until they filed a motion to dismiss on the first day of trial, which was over two years after they had filed their answers.

### D. Incomplete Transcript

■ Webbe and American also argue that their appellate rights have been prejudiced because the trial transcript is incomplete. On the final day of the five day trial, the court reporter failed to transcribe approximately two hours of testimony from a defense witness, Raymond Webbe, president of defendant R. Webbe Corp. The missing portion of the transcript includes part of the cross-examination of the witness, as well as any re-direct and further cross-examination.

Our duty, under Rule 84.14, to make a final disposition of cases before us, unless justice otherwise requires, "presupposes a record and evidence upon which this court can perform that function with some degree of confidence in the reasonableness, fairness, and accuracy of its conclusion." *Taylor v. Coe*, 675 S.W.2d 148, 150 (Mo. App.1984). Webbe and American argue that a complete transcript is indispensable to our review of whether EAU made a submissible case. Webbe and American also contend that their appellate rights have been compromised because there is no record of any evidentiary rulings which the trial court may have made during the untranscribed portion of Raymond Webbe's testimony. We disagree.

■ While a complete transcript may be critical to appellate review in many cases, the missing portion of the trial transcript from the present case can have no prejudicial effect on this appeal. Since neither American nor Webbe raised any objection to unrecorded evidentiary rulings in their motions for a new trial, or even in their briefs to this court, any such objections have not been properly preserved. Rule 78.07. Moreover, the unrecorded testimony could not affect our determination of whether EAU made a submissible case. In reviewing for submissibility, we consider the evidence "in the light most favorable to

---

1. Rule 55.32(a) requires responsive pleadings to "state as a counterclaim any claim which *at the time of serving the pleading* the pleader has against any opposing party, if it arises out of the transaction or occurence that is the subject matter of the opposing party's claim and does not require for its ajudication the presence of third parties of whom the court cannot acquire jurisdiction." (Emphasis added)

[the prevailing party], giving him the benefit of all reasonable inference and disregarding [the losing party's] evidence except as it may support the verdict." *Marshall v. Edlin*, 690 S.W.2d 477, 479 (Mo. App.1985). Webbe and American, thus, cannot be prejudiced by the missing portion of Raymond Webbe's testimony since we would ignore that evidence except to the extent that it contained evidence and inferences favorable to EAU. *Id.* Furthermore, any conceivable prejudice to the appellate rights of Webbe and American as a result of the incomplete transcript becomes moot because of our decision to reverse and remand for other reasons. We thus dispose of this appeal on the record before us.

## II SUBSTANTIVE ISSUES

### A. Submissibility

■ Webbe and American argue that EAU failed to make a submissible case because EAU presented insufficient evidence of its own performance. We disagree.

■ A breach of contract claim requires proof of a valid contract, performance by the party seeking to enforce the agreement, non-performance by the other party, and damages.[2] *See Vandever v. Junior College Dist. of Kansas City*, 708 S.W.2d 711, 716 (Mo.App.1986). Substantial, though incomplete, performance of contractual duties with only slight deviations from the contract is sufficient evidence of performance by the party seeking to enforce the agreement. *Person v. Foggy*, 726 S.W.2d 489, 491 (Mo.App.1987); *See* MAI § 16.04 (1981). Substantial performance is a relative concept referring to the ratio between the performance rendered pursuant to a contract and the performance due under the contract. Analysis of a breach of contract claim based upon a substantial performance theory must therefore begin with determination of the contract's terms.

The original contract between EAU and Webbe was embodied in a purchase order sent by Webbe on July 12, 1983, and accepted by EAU the following day. For approximately $67,000, EAU agreed to deliver to the Hazelwood job site greenhouse windows in accordance with the project plans and specifications. Stephen Reichman, EAU's corporate president, testified that the plans required delivery of a greenhouse system consisting of insulated flat glass units, curved acrylic units, aluminum frames, gaskets, caulking, sealant, sheet metal flashing, screws, fasteners and an awning vent to open the windows. The plans also required two written warranties in connection with the greenhouse system: 1) the insulating glass manufacturer's ten-year warranty on hermetic seals, excluding any defects due to the glass breakage and 2) a three-year warranty, signed by the installer and general contractor, as well as by the manufacturer, to replace aluminum window units which failed in materials or workmanship. The purchase order itself specifically referred to the latter written warranty. In addition, the purchase order also provided that the "seller expressly warrants that all articles, materials, parts and work covered by this order ... shall be merchantable, suited for the purpose intended, of good workmanship and material and free from defects."

Webbe and American argue that EAU did not substantially perform because EAU failed to supply acrylic curved units, window units covered by written warranties for hermetic sealing and workmanship, and an overall product which was merchantable, suited for the purpose intended, of good workmanship and material, and free from defects. These are precisely the obligations created by the original contract between the parties, as embodied in the purchase order from Webbe to EAU. Webbe's and American's contention that EAU failed to perform substantially is thus predicated upon the unarticulated premise that the original contract was never modified. Viewing the evidence in the light

---

**2.** This case was neither pleaded nor tried under Missouri's version of the Uniform Commercial Code, Chapter 400 RSMo.1986.

most favorable to EAU, as we must when assessing submissibility, *Marshall, supra*, 690 S.W.2d at 479, we disagree.

■■■■ At common law, modification of a contract constitutes the making of a new contract, which, like any other agreement, is enforceable only if based upon mutual assent and supported by consideration. *Barr v. Snyder*, 294 S.W.2d 4, 9 (Mo.1956); *Bergmann v. Bergmann*, 740 S.W.2d 215, 216 (Mo.App.1987). The evidence here, viewed most favorably to EAU, supports the inference that the original contract between EAU and Webbe was modified on two separate occasions.

Several weeks after accepting the purchase order from Webbe, EAU's president notified Webbe that Sun Systems Prefabricated Solar Greenhouses, Inc. (Sun Systems), the manufacturer represented by EAU, would be unable to supply the acrylic curves required by the contract. EAU sought authorization from Webbe to substitute glass curves from Sun Systems. Mr. Tonn, an employee of Webbe, told EAU that Webbe lacked authority to approve a change in materials and referred EAU to the project architect, WVP Corporation (WVP). An architect from WVP testified that WVP was authorized, under its contract with the City of Hazelwood, to approve changes to materials of equivalent or superior quality. The architect testified that he did in fact approve EAU's request to supply glass, rather than acrylic, curves because glass is superior material.

Webbe does not expressly contend that Mr. Tonn lacked authority to speak for it or that it did not accept this proposed modification. Arguably, Webbe's acceptance of the change from acrylic to glass curves was not necessary. The contract between Webbe and EAU required EAU to supply greenhouse windows in accordance with the plans and specifications for the Hazelwood project. WVP, the architect, presumably did not need Webbe's consent in order to change the plans and specifications.

■■■■ In any event, Webbe did effectively agree to the change from acrylic to glass curves. While mere silence or inaction does not generally constitute an acceptance of an offer, *Bestor v. American National Stores, Inc.*, 691 S.W.2d 384, 388 (Mo.App. 1985), "the manifestation of acceptance of an offer need not be made by the spoken or written word; it may also come through the offeree's conduct or failure to act." *Moore v. Kuehn*, 602 S.W.2d 713, 718 (Mo. App.1980).

By referring EAU to WVP for approval of the change from acrylic to glass curves, Webbe indicated that it would be agreeable to any change authorized by WVP. It is certainly reasonable to construe this conduct on the part of Webbe as a manifestation of acceptance of a modification which would require EAU to deliver a better product without increasing Webbe's obligation at all. Moreover, EAU promptly notified Webbe of WVP's authorization of the change from acrylic to glass curves. Webbe's failure to reject this change after notification further corroborates Webbe's acceptance of the modification.

Many of the glass curves provided by Sun Systems were defective. As of June, 1984, approximately 23 to 24% of the curves were cracked. Furthermore, Sun Systems, which had not been fully paid under its contract with EAU, declined to make any further effort to solve the problem. Thus, EAU had not rendered substantial performance by that time.

■■■■ However, there was evidence of a subsequent modification permitting EAU to supply thinner glass curves from another company, Sun Craft Greenhouse Company (Sun Craft). Neither Webbe nor American objected that such evidence went beyond the pleadings. Therefore, the second modification was tried by implied consent, and we treat it as if it had been raised in EAU's petition. *E.g.*, *Buttram v. Auto Owners Mut. Ins. Co.*, 779 S.W.2d 1, 3 (Mo.App.1989); Rule 55.33(b).

Raymond Webbe, in a meeting attended by representatives from EAU, WVP and the City of Hazelwood, authorized EAU to order all new glass curves from Sun Craft. This solution was "agreeable" to the City of Hazelwood, according to the WVP architect who attended the meeting. EAU's

president testified that the fact Sun Craft would provide only a five-year written warranty was discussed. EAU's purchase order to Sun Craft required a five-year warranty of unspecified scope, rather than the written warranties specified in the plans and specifications for the project. EAU's president further testified that Raymond Webbe refused to sign EAU's purchase order for the Sun Craft curves because Mr. Webbe "saw no need to." Webbe did agree to pay for the Sun Craft glass because EAU, having received no payment from Webbe as of June, 1984, was "not in a position" to do so.

Viewed in the light most favorable to the verdict, this evidence supports an inference that Webbe authorized EAU to supply Sun Craft glass, even though Webbe had reason to know that the glass would not be conformed to the original plans and specifications. Thus, notwithstanding defects in EAU's previous performance, Webbe, inferentially, agreed to consider EAU's contractual obligations discharged if EAU provided Sun Craft glass curves covered by a five-year written warranty, as well as by warranties of merchantability, fitness for the intended purpose, of good workmanship, and free from defects. Since the parties did not discuss any new price at the time of this second modification, it is also reasonable to infer that their agreement was for Webbe to pay the original contract price, minus the amount which it paid for the Sun Craft curves. We need not decide whether there was adequate consideration to support this modification nor whether Webbe agreed to it because of economic compulsion. Neither Webbe nor American has raised either of these issues.

Following the second modification, EAU's duty was to provide Sun Craft glass curves which were merchantable, suited for the intended purpose, of good·workmanship, free from defects, and covered by a five-year warranty. There was sufficient evidence to submit the issue of EAU's substantial performance of this duty to the jury.

Ordinarily, "receipt and retention of ... goods is ... at least evidence that perform-ance [of a contract] has been substantial." 3A Corbin, *Corbin on Contracts*, 711, p. 345 (1971). In the present case, Webbe's acceptance of the Sun Craft curves did not, in and of itself, signify that EAU had substantially performed, since Webbe was merely taking possession of goods for which it had already paid.

However, there was additional evidence that the Sun Craft glass supplied by EAU substantially complied with the requirements of the modified contract. EAU's president testified there is now a functioning greenhouse system in the Hazelwood City Hall and that he received no complaints about the greenhouse materials after the Sun Craft curves were installed in 1985. Moreover, on May 7, 1985, Webbe requested that WVP authorize Webbe's final payment under its general contract with Hazelwood "immediately after completion of minor repair work due to initial glass failure and assurance of the quality of the new panels which have been installed." Webbe's receipt in December, 1985, of its final payment under the general contract reflected Hazelwood's "acceptance," through WVP, of the Sun Craft curves. Thus, there was sufficient evidence to submit the issue of EAU's substantial performance of the contract as modified.

### B. Jury Instructions

■ Webbe and American also argue that, even if EAU made a submissible case, the verdict directing instructions were erroneous. We agree.

■ A plaintiff's verdict directing instruction must submit every essential element necessary to his recovery. *Weltscheff Medical Center of Independence*, 597 S.W.2d 871, 878 (Mo.App.1980). Failure to require a jury finding regarding every contested, material issue constitutes reversible error. *Flo–Products, Co. v. Valley Farms Dairy, Co.*, 718 S.W.2d 207, 208 (Mo.App.1986).

Even though there was sufficient evidence to support EAU's theory that it substantially performed its contract with Webbe by supplying Sun Craft glass which was merchantable, of good workmanship,

free from defects, and suited for the intended purpose, EAU's verdict directing instructions did not require the jury to make all these findings. The jury was instructed to find for EAU on its breach of contract claim if it determined:

> First, plaintiff E.A.U., Inc. and defendant R. Webbe Corporation entered into an agreement whereby plaintiff E.A.U., Inc. agreed to supply defendant R. Webbe Corporation with parts and materials for a greenhouse to be installed in the Hazelwood City Hall/Police Complex and defendant R. Webbe Corporation agreed to pay plaintiff E.A.U., Inc. $66,482.00 plus 1½% interest per month for past-due accounts; and
>
> Second, plaintiff E.A.U., Inc. substantially performed its agreement in a workmanlike manner, and
>
> Third, defendant R. Webbe Corporation failed to perform its agreement, and
>
> Fourth, plaintiff E.A.U., Inc. was thereby damaged unless you believe plaintiff is not entitled to recover by reason of Instruction Number 9.[3]

This instruction omitted critical terms of the modified agreement between EAU and Webbe: EAU's warranty that materials supplied would be merchantable, suited for the purpose intended, of good workmanship and material, and free from defects. Arguably, the "in a workmanlike manner" language in the instruction may have been sufficient to apprise the jury that the contract required EAU to provide materials which were merchantable, of good workmanship, and free from defects. However, merchantable material is not necessarily suited for the particular purpose intended, *see, e.g.* §§ 400.2–314 and 400.2–315. RSMo 1986, in this case use in Hazelwood's greenhouse system.

Nothing in the verdict directing instructions required the jury to find that the materials supplied by EAU were fit for the intended purpose. The omission of this critical element from the instruction is plainly prejudicial. The issue of whether the materials ultimately supplied by EAU were suited for use in the Hazelwood complex was vigorously contested at trial. EAU could not have substantially performed its obligations under the contract without complying with this patently material warranty. *Price Bros. Lithographic, Co. v. American Packing, Co.*, 381 S.W.2d 830, 837 (Mo. banc 1964).

This instructional error was properly preserved for our review. Admittedly, neither Webbe nor American raised this issue by specific objection at the instruction conference. They did assert it as error in their respective motions for a new trial.

Rule 70.03 does not require specific objections to be made to instructions until the motion for new trial is filed. The risk in waiting until the motion for a new trial is filed, however, is well known. *E.g. Fowler v. Park Corp.*, 673 S.W.2d 749, 756 (Mo. banc 1984). In our Supreme Court's latest pronouncement concerning this risk, Chief Justice Blackmar observed:

> ... A lawyer who finds something in his opponent's instruction which may adversely affect presentation to the jury may speak up at the time, in an effort to obtain the best legal submission for his client. The lawyer who does not do so is not doing his best to win the case before the jury, but rather is thinking of appeal before the verdict is in. The lawyer who remains silent is entitled to review under Rule 70.03, but is not entitled to reversal *unless prejudice is established.* This is the teaching of our recent cases.
>
> *Goff St. Luke's Hospital of Kansas City,* 753 S.W.2d 557, 565 (Mo. banc 1988), citing *Cornell v. Texaco, Inc.,* 712 S.W.2d 680 (Mo. banc 1986), *Hudson v. Carr,* 668 S.W.2d 68 (Mo. banc 1984); Fowler, *supra* (emphasis added).

In *Fowler,* decided four years prior to *Goff,* Justice Blackmar did suggest that even prejudicial instructional error might be considered waived in certain circumstances. 673 S.W.2d at 756. However, as

---

**3.** EAU's verdict directing instruction against American is the same instruction with the additional finding that

"defendant [American] issued its labor and material based on behalf of defendant [Webbe]".

noted by our colleague Judge Clark of the Western District, the Supreme Court has not taken the position that mere "failure to object during trial waives all instruction error." *Nakata v. Platte County R–3 School District,* 750 S.W.2d 669, 673 (Mo. App.1988). This is understandable because such a position would directly contravene Rule 70.03, which the Supreme Court has neither amended nor repealed. Rather, wavier of instructional error may occur only when, as in *Fowler,* counsel goes "beyond the simple withholding of an [objection]," such as by relying on the erroneous instruction in his closing argument. *Fowler,* 673 S.W.2d at 756. Absent such extraordinary conditions, "prejudice remains the pivotal issue" in determining the effect of failure to object to instructions at trial. *Nakata,* 750 S.W.2d at 674.[4]

■ No "aggravating" circumstances warranting a finding of waiver of instructional error were involved in the present case. Counsel for Webbe did not remain silent at the instruction conference, but instead objected to EAU's verdict directing instruction on the grounds that it did not fairly state all the terms of the contract between the parties because the instruction did not expressly refer to a greenhouse "system" and did not require a finding that EAU had furnished materials in accordance with the project plans and specifications. Concededly, Webbe did not specifically object to the instruction on the grounds that the description of the contract did not refer to the warranty of fitness for the intended purpose. To us, this is not conscious misdirection, and EAU does not so contend. More important, under Rule 70.03, Webbe and American did not waive their challenges to the verdict director merely by failing to object until their motion for new trial. And, again, EAU does not contend otherwise.

We therefore hold that Webbe's and American's claim of instructional error is properly preserved. The prejudice caused by that error is substantial.

Accordingly, we reverse and remand this cause to the trial court.

SMITH and GRIMM, JJ., concur.

---

**4.** We acknowledge, as did Judge Clark in *Nakata,* decided two weeks prior to *Goff,* that "some cases, notably *Points v. Dzur,* 713 S.W.2d 634, 635 (Mo.App.1986); *DeClue by DeClue v. Murrell,* 717 S.W.2d 237, 239 (Mo.App.1986); *In Pettet v. Bieterman,* 718 S.W.2d 188, 192 (Mo.App. 1986), contain language which [may interpret] *Hudson* and *Fowler* as repudiating Rule 70.03 and establishing in its place a rule of absolute

waiver." 750 S.W.2d at 673. We agree with Judge Clark that "if so construed, ... those cases go too [far]", *Id.,* particularly in view of the Supreme Court's latest "teaching" that even a party who does not object at trial to erroneous jury instructions is entitled to review to determine whether prejudice has been established. *Goff,* 753 S.W.2d at 565.