# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 01-2341

_____

T.E.A.M. Scaffolding Systems, Inc.,     *
a Missouri corporation,     *
    *
    *
Appellee,     *
    *
v.     *
    *
United Brotherhood of Carpenters     *
and Joiners of America, a labor     *
organization,     *
    *
Appellant.     *

Appeals from the United States
District Court for the Eastern
District of Missouri.

_____

No. 01-2451

_____

[UNPUBLISHED]

T.E.A.M. Scaffolding Systems, Inc.,     *
a Missouri corporation,     *
    *
Appellant,     *
    *
v.     *
    *
United Brotherhood of Carpenters     *
and Joiners of America, a labor     *
organization,     *
    *
Appellee.     *

_____

Submitted: January 14, 2002

Filed: January 24, 2002
_____

Before BOWMAN, FAGG, and MORRIS SHEPPARD ARNOLD, Circuit Judges.
_____

PER CURIAM.

To obtain subcontracting work on a Union job, T.E.A.M. Scaffolding Systems, Inc. (TEAM) was required to sign the National Maintenance Agreement (NMA) with the United Brotherhood of Carpenters and Joiners of America (Union) and receive Union permission for that particular job. TEAM requested "all necessary paperwork" to become signatory to the NMA, and arranged to sign the papers at the Union's local office. Although it was not discussed with TEAM, the Union also required all NMA signatories to sign the Number One Agreement, a one-page, two-sided, comprehensive agreement requiring signatories to provide Union wages and terms of employment on all work completed within the Union's national jurisdiction for the next three years. The office manager of the local Union office prepared the papers for TEAM's signature, completing blank spaces with necessary information, placing red marks next to certain paragraphs, and placing tabs at signature lines. The office manager presented the TEAM representative with a quarter-inch stack of documents, including the NMA, the Number One Agreement, and a questionnaire, none of which any TEAM representative had read before the execution. The TEAM representative signed all tabbed lines, but did not read any of the documents. TEAM did not receive copies of the executed documents.

Two years later, the Union attempted to have TEAM sign the Number One Agreement for a separate job. TEAM refused. TEAM then sued the Union seeking a declaratory judgment, injunctive relief, and indemnification for TEAM's earlier signature on the Number One Agreement, claiming the Agreement was invalid

because the Union obtained TEAM's signature through fraud in the execution, or by mutual or unilateral mistake, or, there was no mutual assent to the Number One Agreement. The Union cross-claimed for damages resulting from breach of the Number One Agreement. After a bench trial, the district court[*] found there was no fraud in the execution, no mutual mistake, no excusable unilateral mistake, and no mutual assent. The district court found that because the Number One Agreement lacked mutual assent, no contract was formed and the Number One Agreement could not be enforced against TEAM. The district court also denied TEAM's request for indemnification and injunctive relief and the Union's request for damages. The Union appeals and TEAM cross-appeals. This case was filed under the Labor Management Relations Act (LMRA) so we apply federal labor law and look to Missouri state law where it is compatible with the purposes of the LMRA. Textile Workers Union v. Lincoln Mills of Ala., 353 U.S. 448, 456-57 (1957). We review the district court's finding of facts for clear error and its conclusions of law de novo. Daggitt v. United Food & Commercial Workers Int'l Union, Local 304A, 245 F.3d 981, 986 (8th Cir. 2001) (standard of review).

The main question on appeal is whether TEAM can avoid being bound by a contract its representative signed without reading. Because the law is clear that a person who signs a written agreement is bound by its terms unless the signature was fraudulently obtained, we conclude that the Number One Agreement is enforceable. See Midwest Printing, Inc. v. Am Int'l, Inc., 108 F.3d 168, 170 (8th Cir. 1997) (applying Missouri law).

> A written contact is the highest evidence of the terms of an agreement between the parties to it, and it is the duty of every contracting party to learn and know its contents before he signs and delivers it. . . . If one can read his contract, his failure to do so is such gross negligence that it will

---

[*]The Honorable Jean C. Hamilton, Chief United States District Judge for the Eastern District of Missouri.

estop him from denying it, unless he has been dissuaded from reading it by some trick or artifice practiced by the opposing party.

Higgins v. American Car Co., 22 S.W.2d 1043, 1044 (Mo. 1929); see also Del Raso v. United States, 244 F.3d 567, 570 (7th Cir. 2001) (holding North Carolina law requires parties to read a document before signing and justifies rescission only in cases of fraud or mutual mistake); Elsken v. Network Multi-Family Sec. Corp., 49 F.3d 1470, 1474 (10th Cir. 1995) (holding under Oklahoma law a party is bound by a signed contract absent false representation or fraud); Reid v. Sears, Roebuck & Co., 790 F.2d 453, 461 (6th Cir. 1986) (holding Michigan law requires that a person who executes a contract be chargeable with knowledge of its contents); State ex rel. Painewebber, Inc. v. Voorhees, 891 S.W.2d 126, 130 (Mo. banc 1995) (holding under Missouri law when a competent contracting party may read a contract, statements by the other party are not usually a basis for voiding assent to the agreement).

We reject TEAM's contention that the Union gained its signature on the Number One Agreement by fraud in the execution. "'Fraud in the execution' arises when a party executes an agreement 'with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms.'" Southwest Adm'rs, Inc. v. Rozay's Transfer, 791 F.2d 769, 774 (9th Cir. 1986) (citation omitted). TEAM had both a reasonable opportunity and a duty to read the documents before signing them. Higgins, 22 S.W.2d at 1044. Indeed, the district court found that "it was unreasonable for [TEAM's representative] to sign the documents without reading them and that T.E.A.M. failed to prove 'excusable ignorance.'"

Like the district court, we also reject TEAM's contentions that it became signatory to the Number One Agreement because of mutual mistake or excusable unilateral mistake. The Union intended that TEAM sign the Number One Agreement so the parties were not operating under the same misconception and there was no mutual mistake. See Sheng v. Starkey Labs. Inc., 117 F.3d 1081, 1084 (8th Cir.

-4-

1997); Great Atl. Ins. Co. v. Liberty Mut. Ins. Co., 773 F.2d 976, 979 (8th Cir. 1985). Although TEAM had a unilateral mistaken belief about the documents it signed, TEAM's mistake is not excusable because the Union had no reason to know TEAM's signature on the Number One Agreement was unintended. Boston v. Security Fed. Sav. & Loan Ass'n, 877 F.2d 696, 697 (8th Cir. 1989) (applying Missouri law).

Finally, we conclude the district court was clearly mistaken in finding the Number One Agreement lacked mutual assent. Computer Network, Ltd. v. Purcell Tire & Rubber Co., 747 S.W.2d 669, 674 (Mo. Ct. App. 1988) (holding mutual assent is a question of fact). Under Missouri law, the objective intent of the parties, as measured by their words and actions, determines the essential terms of the contract; a party's subjective intent is not controlling. See Newman v. Schiff, 778 F.2d 460, 464 (8th Cir. 1985); McDaniel v. Park Place Care Center, Inc., 918 S.W.2d 820, 827 (Mo. Ct. App. 1996); Karsch v. Carr, 807 S.W.2d 96, 99 (Mo. Ct. App. 1990). Consequently, we must reject TEAM's subjective assertion that it did not intend to be bound by the Number One Agreement. The words of the Number One Agreement are not ambiguous and TEAM's signature on the agreement shows TEAM's objective intent to be bound by its terms. This objective intent is controlling. See Computer Network, 747 S.W.2d at 674. Because there is objective evidence of mutual assent, we cannot excuse TEAM from its properly executed written obligation simply because its representative did not read the papers before signing them.

We conclude the Number One Agreement is an enforceable contract. Accordingly, we reverse and remand to the district court for further proceedings consistent with this opinion. In addition, we sustain the Union's objection to including documents in the appellate record that were not before the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.