The **TRUSTEES OF THE TWIN CITY BRICKLAYERS, Fringe Benefit Funds and the Trustees of the International Trowel Trades Pension Fund, Plaintiffs,**

v.

**MCARTHUR TILE CORPORATION, a foreign corporation not qualified to do business in Minnesota, and Lincoln McArthur, Defendants.**

**No. CIV. 03–5497 PAM/RLE.**

United States District Court,
D. Minnesota.

Jan. 7, 2005.

Andrew E. Staab, Stephen Kelly, Rosene Haugrud & Staab, St. Paul, MN, for Plaintiffs.

James Brendan Sherman, Wessels & Pautsch, PC, Minneapolis, MN, for Defendants.

## MEMORANDUM AND ORDER

MAGNUSON, District Judge.

This matter was tried to the Court on January 3 and 4, 2005. The bench trial addressed whether a valid contract existed that required Defendants to make contributions to Plaintiffs pursuant to the Employee Retirement Income Securities Act ("ERISA"). Plaintiffs are trustees of multi-employer fringe benefit plans as defined in 29 U.S.C. § 1002(37). In particular, Plaintiffs assert that they are third party beneficiaries to a union labor agreement between the Bricklayers and Allied Craftworkers Union Local #1 of Minnesota ("the Union") and Defendants McArthur Tile Corporation ("McArthur Tile") and Lincoln McArthur. Plaintiffs contend that this union labor agreement is an ERISA-designated plan, which requires employers to make contributions to benefit funds. As trustees of these funds, Plaintiffs maintain that they are entitled to recover delinquent contributions from Defendants. Defendants assert that the purported agreement is void *ab initio* because it was procured through fraud in the execution. The Court issues this Order consistent with its oral ruling on January 4, 2005, and rules in favor of Defendants.

## FACTS

In 1989, Lincoln McArthur joined his father's company, McArthur Tile, and is now vice president and ninety percent owner of the company. In 1993, McArthur Tile incorporated in the state of North Dakota. McArthur Tile maintains offices in Fargo, North Dakota, and conducts business both in North Dakota and Minnesota. In late 2001 or early 2002, the Union first approached McArthur for the purposes of discussing a potential union labor agreement with McArthur Tile.

Prior to that time, McArthur had limited dealings with the Union. (*See* Pls.' Exs. 15–18.) In 1992 and in 1999, McArthur individually signed up with the Union to work on two specific and short term projects in the Twin Cities area. (*See id.*) In 1996, McArthur Tile contracted for a short term project in the Duluth area. To complete this project, McArthur Tile employed McArthur's uncle, who was a Duluth union member. As a result, McArthur Tile signed a short form agreement with the Independent Duluth Ceramic Tile Contractors and Bricklayers and Allied Crafts Union Local #3. This agreement stated:

> The undersigned Employer hereby agrees to abide by the terms and conditions of the Agreement between certain Independent Duluth Ceramic Tile Contractors and Bricklayers and Allied Crafts Union Local #3 of Duluth, Minnesota, the bargaining agent for the Tilelayer members of Local #3 for all work covered by this Agreement.

(*Id.* Ex. 14.) McArthur's uncle worked on the project for two weeks. McArthur Tile has not sought a similar arrangement since this event. (*Id.*)

In late 2001 or early 2002, Union field representative and business agent Rodney Sletton contacted McArthur. As a field representative and business agent, Sletton's duties included organizing potential union employees and employers. At first, McArthur resisted any effort to unionize McArthur Tile. Nonetheless, Sletton continued to contact McArthur. Over time, McArthur told Sletton that various conditions needed to be satisfied in order for McArthur Tile to become a union employer. In particular, McArthur Tile's primary competitor also had to become unionized. In addition, McArthur required that the Union speak with McArthur Tile employees about the potential union labor agreement, specifically as it pertained to health

and welfare benefits.[1]

In either October 2002 or March 2003, McArthur met with Sletton and Union vice president Michael Hawthorne in Itasca State Park. At this meeting, a general union labor agreement was contemplated, but there was no discussion about its specific terms. McArthur claims that he signed a one page document that Hawthorne gave him, which also included his competitor's signature. McArthur testified that he believed that this document permitted the Union to talk with his employees and his competitor's employees about a potential union labor agreement. Hawthorne contends that McArthur signed a complete union labor agreement. However, Hawthorne concedes that this purported contract lacked certain details, and that specific issues, like health and welfare benefits, remained in dispute. The whereabouts of this purported agreement are unknown.

In May 2003, McArthur again met with Hawthorne and Sletton at a diner in Detroit Lakes, Minnesota. The parties agree that McArthur again signed some kind of an agreement. However, there is conflicting testimony as to when he signed the agreement and what the agreement consisted of. For example, Hawthorne testified in his deposition that he did not see McArthur sign the agreement. At trial, however, Hawthorne testified that he was previously mistaken, and that McArthur signed the union labor agreement in the parking lot as the parties were leaving the diner. Hawthorne concedes that he did not actually see the particular document that McArthur purportedly signed, but nonetheless testified that the document included both a complete union labor agreement and signature page. (*See* Pls.' Ex. 6.) Sletton also testified that McArthur signed a document in the parking lot, but could not attest with any certainty that the signature page was attached to a complete union labor agreement.

In contrast, McArthur testified that he signed a one-page document in the restaurant similar to Defendants' Exhibit 1. He contends that Hawthorne represented that he had misplaced the consent form that McArthur signed at Itasca State Park, and that he needed McArthur to sign a new one to permit the Union to talk with his employees. McArthur testified that he briefly read the document, confirmed with Hawthorne and Sletton that it was a consent form for the Union to meet with his employees, and signed it. McArthur agrees that his signature is indeed on the final page of Plaintiffs' Exhibit 6, but maintains that this signature page was detached from the remainder of the Exhibit and presented to him by itself.

It is undisputed that McArthur's signature was the first notation on the signature page. Although the parties dispute whether the signature page was by itself or attached to a complete union labor agreement, the substance of the signature page read:

THIS AGREEMENT IS BINDING PERSONALLY AND INDIVIDUALLY UPON EACH OF THE FOLLOWING: THE UNIONS, THE UNDERSIGNED EMPLOYER, AND EACH OF THE INDIVIDUALS, PARTNERS, OFFICERS, OR STOCKHOLDERS OF THE EMPLOYER OF THE UNDERSIGNED. SIGNATORS EACH CERTIFY THAT SUCH SIGNATORS HAVE AUTHORITY TO EN-

---

**1.** McArthur and a number of his employees are American Indians, and qualify for health benefits provided by the Indian Health Service, a division of the United States Department of Health and Human Services. Thus, according to McArthur, health and welfare benefits were not a concern for McArthur Tile employees.

TER INTO THIS AGREEMENT AND TO BIND THE PERSONS AND PARTIES DESCRIBED IN THIS PARAGRAPH.

(*See* Pls.' Ex. 6.) McArthur did not date the document when he signed it. (*Id.*) At his office in Minneapolis, Hawthorne added his signature to the document, and with a typewriter, also added company names, titles and addresses, as well as the effective dates of the agreement. According to Hawthorne, these additions merely memorialized the terms as agreed to by McArthur. Hawthorne contends that he then separated the signature page from the rest of the union labor agreement, and faxed the signature page, along with the front page of the agreement, to the benefit administrator. Hawthorne testified that he did not date the document and maintained that he did not fill in the date because he did not know when the document was signed. However, Hawthorne also testified that he was present at the meeting in May 2003 when McArthur purportedly signed the union labor agreement.

In sum, the parties dispute both what was discussed and what was signed by McArthur and the Union. Both parties agree that McArthur signed a document in Itasca State Park. McArthur insists it was a consent form, while the Union contends that it was a draft of a union labor agreement. Because this document was lost and the Union is unable to produce this document, the Court finds this failure chargeable to the Union and concludes that McArthur signed a single document that merely permitted the Union to contact his employees. Further, the Court finds that McArthur signed a one page document in May 2003.[2] Although the docu-

ment in its current state is evidenced as the last page of Plaintiffs' Exhibit 6, the Court finds that this document was incomplete when McArthur signed it (*see* Defs. Ex. 1), and unattached to any other document.

## FRAUD IN THE EXECUTION

■ ERISA permits "trustees of plans to recover delinquent contributions efficaciously, and without regard to issues which might arise under labor-management law." *Berry v. Garza*, 919 F.2d 87, 89–90 (8th Cir.1990) (citing 126 Cong. Rec. 23,039 (1980)). An action by a trustee "cannot be thwarted by defenses not apparent from the face of the Agreement." *Central States, Southeast & Southwest Areas Pension Fund et al. v. Indep. Fruit & Produce Co.*, 919 F.2d 1343, 1348–49 (8th Cir.1990) (quotation omitted). Thus, under ERISA, employers are limited to at least two defenses in an action to recover delinquent contributions: (1) the contributions themselves are illegal; and (2) the labor contract is *void ab initio*. *See Local 49 Operating Eng'rs Health & Welfare Fund, et al. v. Flueger Constr. Co.*, No. 03–2798, 2004 WL 2066849, at *2 (D.Minn. Aug. 18, 2004) (Tunheim, J.) (citing *Bituminous Coal Operators' Ass'n v. Connors*, 867 F.2d 625, 634 (D.C.Cir.1989)).

A contract that is *void ab initio* is "[n]ull from the beginning, as from the first moment when a contract is entered into." Black's Law Dictionary 1568 (7th ed.1999). Defendants assert that the purported agreement signed by McArthur is *void ab initio* because it was procured through fraud in the execution. Fraud in the execution arises when an agreement is executed but a party neither has knowledge nor reasonable opportunity to obtain knowl-

---

**2.** The Court notes that Plaintiffs previously submitted an affidavit to the Court that included the disputed signature page erroneously attached to the wrong union labor agree-

ment. Plaintiffs admit this error, and the Court finds this error likewise chargeable against the Union.

edge of its character and essential terms. *See T.E.A.M. Scaffolding Sys., Inc. v. United Bhd. of Carpenters,* 29 Fed.Appx. 414, 416, 29 Fed.Appx. 414 (8th Cir.2002).

■ During trial, both parties submitted conflicting testimony regarding the circumstances, conditions, and substance of the document signed by McArthur. The Court has found that McArthur signed an incomplete, single document likened to that in Defendants' Exhibit 1. The Court further finds that this document is so vague on its face that it cannot be interpreted as a union labor agreement. Indeed, Hawthorne admitted that this signature page by itself was vague and ambiguous. Both parties concede that the language of this document fails to reference or incorporate any other document or any other terms allegedly discussed between the Union and Defendants. In comparison, previous Union contracts clearly reference and incorporate the particular union labor agreement. (*See* Pls.' Ex. 14.) Moreover, the document signed by McArthur was incomplete except for his signature, and later completed by Union representatives outside of McArthur's presence. The document was not dated because Hawthorne could not remember when it was signed, despite his testimony that he was present when McArthur signed the document. The evidence demonstrates that the vague and ambiguous document signed by McArthur in 2003 was not a union labor agreement.

The document's vagueness and ambiguity caused McArthur to question its scope, applicability, and purpose. Although McArthur had previously dealt with the Union, these dealings were very limited both in duration and purpose. When McArthur signed the document, no definitive agreement had been reached on specific essential terms like health and welfare benefits, and the Union had not yet met with his employees. Under the belief that the document was for the sole purpose to permit the Union to meet with McArthur Tile employees, McArthur signed the document.

As a matter of law, the Court finds that there was fraud in the execution and thus the agreement is *void ab initio.* Defendants have successfully demonstrated that McArthur did not know that he was signing a union labor agreement and that his ignorance was excusable because he relied on the representations of Sletton and Hawthorne. Because this document is *void ab initio,* there was no union labor agreement between McArthur Tile and the Union. McArthur Tile therefore had no obligation to submit contributions to Plaintiffs, and thus there are no delinquent contributions for Plaintiffs to recover.

## CONCLUSION

In this instance, the Court finds in favor of the employer. ERISA evidences a long strife between the laborer and industrialized processes, where most often the benefit is properly conferred to the unions. Although unions rightfully have the strength and ability to develop these labor contracts, unions must likewise assure that enforceable contracts are executed. In the face of technological advancement and increased union personnel sophistication, which have created the potential for manipulation within contract negotiation and execution, unions must ensure that the execution of contractual labor agreements conform with the applicable standards of contract formation. As such, the Court encourages unions to explicitly state the material terms of union labor agreements to ensure that mutual assent exists, and to provide copies of these agreements to employers, so that the contracting parties are aware and understand the nature and scope of these agreements.

Defendants have successfully demonstrated that the agreement between McArthur Tile and the Union was procured through fraud in the execution and thus *void ab initio*. Therefore, Plaintiffs are not entitled to recover from Defendants. Accordingly, **IT IS HEREBY ORDERED** that judgment be entered in favor of Defendants, with costs and disbursements assessed against Plaintiffs.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**