Gary T. PARKS and Gladys F. Parks, Appellant–Respondents,

v.

MBNA AMERICA BANK, Respondent–Appellants.

Nos. WD 65646, WD 65691.

Missouri Court of Appeals, Western District.

Oct. 3, 2006.

---

awards against them and denied their claim for attorney fees. MBNA America Bank, N.A. cross-appeals the denial of its motion to reform the settlement and release agreement. We affirm in part, reverse in part, and remand.

## Factual and Procedural Background

David E. Herron, II, Kansas City, KS, for appellant-respondents.

Timothy M. Bosslet, St. Louis, MO, for respondent-appellant.

Before HAROLD L. LOWENSTEIN, P.J., PAUL M. SPINDEN, and THOMAS H. NEWTON, JJ.

THOMAS H. NEWTON, Judge.

Gary and Gladys Parks appeal a final judgment that confirmed two arbitration

MBNA America Bank, N.A. (MBNA) is a national banking association that issues credit cards. MBNA issued two accounts to Mr. Parks and one to Mrs. Parks. Sometime around 2003, the Parks' accounts became delinquent because they were no longer able to pay those credit card bills and other debts. Each account was sent to arbitration and the arbitrator found in MBNA's favor. The break down of the arbitration awards is as follows:

| Cardholder | Award Amount | | Date |
|---|---|---|---|
| Gary | $ 4,810.02 | (hereinafter "*Parks* I") | 01/07/2004 |
| Gary | $66,869.52 | (hereinafter "*Parks* II") | 06/30/2004 |
| Gladys | $ 4,408.54 | (hereinafter "*Parks* III") | 07/14/2004 |

On July 15, 2004, MBNA filed a Motion to Confirm the *Parks I* arbitration award as a judgment. On August 12, 2004, MBNA sent a dunning letter to collect on *Parks II*. In the middle of September 2004, the parties entered settlement negotiations. Mr. David Weimer of the Kansas City office of Kramer & Frank, P.C. represented MBNA. Mr. David Herron represented the Parks. Through a series of emails, Mr. Weimer and Mr. Herron agreed to a settle all claims for $3,500. The following are the pertinent segments of the emails:

September 15, 2004, Weimer to Herron: Weimer states that his client has authorized him to "offer to settle all claims" upon payment of $3,900.

September 16, 2004, 9:05 a.m. Herron to Weimer:

Herron states, "I would like to make certain that both Gladys and Gary (h/w) are released from liability. . . ."

September 16, 2004, at 11:39 a.m. Weimer to Herron:

Weimer agrees to accept $3,900 as "settlement in full" if received within 30 days and agrees to continue the pending hearing date past the anticipated date of payment; and Weimer agrees to release Herron's client's wife as well as Herron's client.

September 22, 2004. Weimer to Herron:

Weimer accepts the offer of $3,500.00 as "settlement in full. . . ."

On September 22, 2004, a "Settlement and Release Agreement" (Agreement) was signed by Mr. and Mrs. Parks and MBNA through David Weimer. The sections of

the release significant in this case are as follows:

- The "Recitals" section on page 1 refers only to Case No. 04 N1 AC 00089 in the Circuit Court of Chariton County, Missouri.
- The "Release" paragraph on pages 1 and 2 states that each party releases the other from any and all manner of actions, known or unknown.
- The "Attorney fees" paragraph on page 2 provides for the recovery of attorneys' fees if one party has to bring suit against the other party to enforce the agreement.
- The "Authority" paragraph on page 3 states that each party "warrants and represents" that the person executing the release on behalf of the party is authorized to do so.

Per the terms of the agreement, MBNA voluntarily dismissed the pending motion to confirm the *Parks I* award against Mr. Parks with prejudice. Shortly thereafter, MBNA, through the law office of Kramer & Frank, continued to call and send letters to seek collection on *Parks II* and *III*. The Parks and Mr. Herron informed MBNA's attorneys that those claims were released in the settlement agreement executed September 22.

The Parks filed a petition to vacate the arbitration awards *Parks II* and *III* because MBNA and the Parks reached an agreement that all claims against the Parks were fully and finally satisfied. They also sought attorney fees as provided for in the Agreement.[1] MBNA filed an answer and a counter-claim seeking to confirm as judgments *Parks II* and *III*. The

counter-claim also sought to reform the release to be limited to *Parks I* only. The Parks were granted summary judgment by the trial court who reasoned that the release agreement covered *Parks II* and *III*. It denied summary judgment as to the Parks' request for attorney fees under a breach of contract claim and set the matter for trial.

A bench trial was held in May 2005. Mr. Parks testified that he and his wife had defaulted on all three of their MBNA credit cards. He claimed, however, the release agreement excused them from paying the owed amounts. Mr. Weimer testified that he thought the release pertained only to *Parks I* when he signed it because he was unaware of the other two awards (*Parks II* and *III*), the agreement referenced *Parks I* as the case being settled, and *Parks I* is the only case he had the authority to settle. Mr. Herron testified that he never informed Mr. Weimer that *Parks II* and *III* existed. Subsequently, the trial court ruled that it lacked jurisdiction to vacate the arbitration awards of *Parks II* and *III* and set aside its summary judgment. Therefore, it confirmed *Parks II* and *III*, entered judgment against the Parks, and denied their request for attorney fees. It also denied MBNA's request to reform the release provision in the Agreement and entered judgment for the Parks. Both parties appeal.

### Standard of Review

The trial court heard this case without a jury. As such, the judgment will be upheld unless it is not based on sub-

---

1. The Parks filed an amended petition grounding the request for attorney fees under a breach of contract claim. The Parks claimed that MBNA breached the settle and release agreement when it sent collection letters and made collection phone calls on the *Parks II* and *III* accounts. It also claimed MBNA breached the agreement because it counter-motioned to confirm *Parks II* and *III*, seeking to enforce arbitration awards on accounts that were fully and finally settled.

stantial evidence, goes against the weight of the evidence, or is based on an erroneous declaration or application of the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The evidence and all reasonable inferences will be "viewed in the light most favorable to the trial court's judgment, and all contrary evidence and inferences must be disregarded." *Miller v. Gammon & Sons, Inc.*, 67 S.W.3d 613, 618 (Mo.App. W.D.2001).

## Legal Analysis

■ In their first point on appeal, Mr. and Mrs. Parks argue that the trial court erroneously confirmed the arbitration awards of *Parks II* and *III* because MBNA did not prove the three elements necessary to entitle it to confirmation. Specifically, MBNA did not establish that a written agreement to arbitrate existed between the parties; MBNA failed to show that the dispute between the parties fell within the scope of any such arbitration agreement; and MBNA did not present evidence as to the authenticity of the arbitrator's awards. MBNA responds that it did not need to satisfy the three elements because they only apply to proceedings to compel arbitration and not to those confirming arbitration awards. We agree with MBNA.

■ A motion to confirm an arbitration award is governed substantively by section 9 of the Federal Arbitration Act (FAA)[2] and procedurally by the Missouri Uniform Arbitration Act (MUAA), sections 435.400 and 435.425.[3] *Edward D. Jones & Co. v. Schwartz*, 969 S.W.2d 788, 793 (Mo.App. W.D.1998). Both the FAA and the MUAA

are clear on the confirmation of an arbitration award. Contrary to what the Parkses argue, section 435.400 and 9 U.S.C. § 9, do not require the party moving to confirm the award to provide evidence that an agreement to arbitrate exists. The cases Mr. and Mrs. Parks rely on that state the existence of an agreement is required to arbitrate involve disputes about compelling or staying arbitration under section 435.355 and 9 U.S.C. § 4 (1999). There is no indication that MBNA asked the court to compel arbitration, as no evidence exists that the Parks objected to their debts being arbitrated after receiving notices to arbitrate from MBNA.

■ The only requirement of a party moving for confirmation is that he apply or move for it. 9 U.S.C. § 9; §§ 435.400 & 435.425. Upon application of a party to confirm the arbitration award as judgment, the court must confirm the award, unless the opposing party moves to vacate or modify the award. 9 U.S.C. § 9; § 435.400; *see also Doyle v. Thomas*, 109 S.W.3d 215, 218 (Mo.App. E.D.2003). In vacating or modifying an arbitration award, the trial court is limited to the grounds set forth in sections 435.405 and 435.410. *Holman v. Trans World Airlines, Inc.*, 737 F.Supp. 527, 530 (E.D.Mo. 1989). "The party challenging the arbitration award has the burden of demonstrating its invalidity." *Doyle*, 109 S.W.3d at 218. Unless the party moving to vacate or modify prevails, the court must confirm the award. *Id.*

■ On October 1, 2004, the Parks filed a motion to vacate[4] the *Parks II* and *III* arbitration awards, and on November 11,

---

**2.** Federal Arbitration Act, 9 U.S.C. §§ 1–307 (1999).

**3.** All statutory references are to RSMo. (2000), unless otherwise indicated.

**4.** The title of the motion is "Motion to Vacate Arbitration Award." However, the Parks not only prayed for vacating the awards; they prayed, in the alternative, for modification of the awards to indicate that the Parks were not indebted to MBNA.

2004, MBNA filed a counter-motion seeking to confirm the awards. As the party challenging the arbitration awards, the Parks had the burden of demonstrating that the awards were not valid. *Id.* Although the petition alleged all four statutory grounds for vacating the awards, no evidence was adduced to support those allegations. Conclusory allegations are insufficient to establish the invalidity of an award. *See Air Shield Remodelers, Inc. v. Biggs,* 969 S.W.2d 315, 317 (Mo.App. E.D. 1998). Without the Parkses bringing forth any evidence that the grounds set forth in sections 435.405 and 435.410 have been violated, the trial court's decision that it lacked jurisdiction to vacate and had to confirm the award was based on substantial evidence and an accurate application of the law. Therefore, we affirm the trial court's decision to confirm the *Parks II* and *III* arbitration awards.

■ In their second and third points, the Parkses argue that the trial court erred in denying their breach of contract claim because MBNA's conduct breached the Agreement, and consequently, they incurred attorney fees in their attempt to enforce the Agreement. Paragraph 3 of the Agreement provides reasonable attorney fees to the prevailing party if "any party is required to bring any action at law or in equity against any other party to enforce any of the terms hereof." Paragraph 5 of the Agreement provides that the Agreement "may be pleaded as a full and complete defense to any subsequent action or other proceeding arising out of, or relating to, or having anything to do with, any and all of the claims, counterclaims, issues, defenses or other matters alleged or specifically released and discharged by this Agreement." The trial

court interpreted these provisions to only award attorney fees in the event MBNA sued the Parkses to collect on *Parks II* and *III.*[5] We disagree.

■ The trial court erroneously declared and applied the law when it found that MBNA's actions did not constitute a breach of contract. "The interpretation of settlement or release agreements, like all contracts, is a question of law." *Goldring v. Franklin Equity Leasing Co.,* 195 S.W.3d 453, 456 (Mo.App. E.D.2006). The Agreement provides that each party released and discharged each other and their representatives:

> from any and all manner of action or actions, causes of action or actions in law or equity, suits, debts, liens, contracts, agreements, promises, liabilities, claims, demands, damages, losses, costs or expenses of any nature whatsoever, known or unknown, fixed or contingent, which any party may have, or may hereafter have, against any other party by reason or of any happening, matter, cause or thing occurring prior to the date hereof, including, without restricting the generality of the foregoing, any and all claims, demands, controversies, actions, causes of action, obligations and liabilities of any nature whatsoever. . . .

■ A settlement or release agreement will be interpreted according to the same principles that govern the interpretation of any other type of contract. *Liquidation of Prof'l Med. Ins. Co. v. Lakin,* 88 S.W.3d 471, 476 (Mo.App. W.D.2002). "The cardinal rule in the interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention." *Mid Rivers Mall, L.L.C. v. McManmon,* 37 S.W.3d 253, 255 (Mo.App.

---

**5.** The trial court denied the breach of contract claim, ruling that the Parkses failed to state a cause of action, no cause of action exists as to MBNA's alleged conduct, and the action should not have been filed.

E.D.2000). If the contract is unambiguous, then the intentions of the parties should be determined from the contract alone. *Lakin*, 88 S.W.3d at 476. "A contract is ambiguous only if its terms are susceptible of more than one meaning so that reasonable [persons] may fairly and honestly differ in their construction of the terms." *Eisenberg v. Redd*, 38 S.W.3d 409, 411 (Mo. banc 2001). "If there is no ambiguity, then the court need not resort to construction of the contract, and instead intent is determined from the four corners of the contract." *Lakin*, 88 S.W.3d at 476.

Our case is similar to the *Lakin* case. In *Lakin*, this court found a settlement agreement stating that "Murff will not pursue any claim, known or unknown, of any nature whatsoever" was clear and unambiguous. 88 S.W.3d at 478. The agreement in dispute in this case contains similar language: "Each of the parties hereto does hereby release and forever discharge each other ... from any and all manner of action ... known or unknown ..." As in *Lakin*, we find no ambiguity as to the language of the agreement. Nor do we find that the release language should be limited to *Parks I*. The release in the Agreement is general and fails to restrict its terms to *Parks I* and, therefore, "will ... be regarded as embracing all claims or demands which had matured at the time of its execution." *Williams v. Riley*, 243 S.W.2d 122, 124 (Mo.App.1951). *Parks II* and *III* were in existence at the time of the Agreement. According to the release, MBNA released the Parkses from debts or demands that occurred before September 22, 2004, i.e. *Parks II* and *III*.

■ The Agreement further provides that each party agreed "to perform any further acts and execute any documents which may be reasonably necessary or desirable to carry out the provisions of this Agreement." The Parkses had the obligation to pay the consideration of $3,500, and MBNA had the obligation to abate collection efforts for *Parks II* and *III*, as it was reasonably necessary to carry out the release of all the Parkses' debts. The Parkses paid the consideration and, therefore, MBNA was required to abate collection efforts. Thus, MBNA breached the Agreement when it continued to seek collection on those arbitration awards. MBNA claims that even if it breached the Agreement, the claim must fail because the Parkses suffered no damages from its actions. We disagree.

After the Parkses alerted MBNA that the Agreement settled the claims and MBNA continued to seek collection, the Parkses sought the assistance of their attorney, Mr. Herron, to explain to MBNA that the Agreement settled all their debts. Mr. Herron charged for his telephone call and letter to Kramer & Frank, and the Parkses incurred attorney fees, i.e. damages from the breach. Hence, the trial court erred when it denied the breach of contract claim.

The Agreement provided that the prevailing party is entitled to attorney fees. It was error not to award attorney fees. *See Architectural Res., Inc. v. Rakey*, 912 S.W.2d 676, 678 (Mo.App. S.D.1995) ("Where a contract does provide for the payment of attorney fees and expenses incurred in the enforcement of a contract provision, it is error to fail to make such an award to the prevailing party."). Accordingly, we reverse the trial court's denial of attorney fees and order the trial court to enter an award of attorney fees to Mr. Herron; the amount is to be determined in its discretion.

■ We now turn to MBNA's cross-appeal. In its first point, MBNA argues that the trial court erred in not reforming the release agreement to pertain exclusively to *Parks I* because

MBNA's attorney had no authority to settle *Parks II* and *III*. The trial court found that MBNA did not expressly grant Mr. Weimer the authority to settle *Parks II* and *III*, but clothed Mr. Weimer with apparent authority. In the absence of express authority to settle a case, an attorney's authority "should be analyzed in terms of apparent authority." *Rosenblum v. Jacks or Better of Am. W., Inc.*, 745 S.W.2d 754, 760 (Mo.App. E.D.1988). MBNA claims that it did not create apparent authority whereby counsel could settle *Parks II* and *III*.

■■■■■ "[A]pparent authority is created by conduct of the principal (the client) which causes a third person reasonably to believe that another (the attorney) has the authority to act for the principal." *Id.* Apparent authority exists only concerning third parties that believe and have reason to believe that the authority exists. *Jeff-Cole Quarries, Inc. v. Bell*, 454 S.W.2d 5, 13 (Mo.1970). Because an agent cannot create his own authority, apparent authority must arise from the acts of the principal, not from the acts of the agent. *Id.* Apparent authority "may be shown by evidence of the facts and circumstances attending the actions of the parties." *Rosenblum*, 745 S.W.2d at 761. "[T]rial judges are in the best position to assess the content of an attorney's authority to settle ... in light of the individual facts and circumstances of the case and the customs of lawyers and clients in the locality." *Id.* at 763.

The trial court found that Mr. Weimer is a partner with Kramer & Frank, P.C. MBNA contracted with Kramer & Frank to handle collections on delinquent accounts. Kramer & Frank sent letters to the Parkses on Kramer & Frank letterhead that identified the office as the agent for MBNA. As the agent, Kramer & Frank was allowed to accept direct payments from the Parkses. MBNA bestowed upon Kramer & Frank the authority to send out collection letters, make collection telephone calls, and receive debt payments. Additionally, there is no dispute that MBNA gave Kramer & Frank the authority to settle *Parks I*. Thus, the Parkses would have reason to believe that not only did Kramer & Frank have the authority to settle *Parks II* and *III*, but the very release drafted by Kramer & Frank and presumably approved by MBNA contained language specifically discharging "any and all" other claims. Furthermore, the emails sent between Mr. Herron and Mr. Weimer, in an attempt to settle the debts, confirms this view. The trial court was in the best position to assess the authority of Kramer & Frank and its agent, Mr. Weimer. *Id.* Therefore, we believe the trial court's ruling was correct.

MBNA argues that under *Southwestern Bell Telephone Co. v. Roussin*, 534 S.W.2d 273 (Mo.App.1976), Mr. Weimer's testimony stating that he did not have authority to settle *Parks II* and *III* overcomes any evidence to the contrary. Southwestern Bell does not hold that a settlement becomes void anytime an attorney testifies that he did not have the authority to settle as he had previously represented. Rather, it holds that when an attorney represents that he has authority to settle and then reaches an agreement to settle, the burden is on the client to prove the attorney lacked authority in order to avoid the settlement. *Landmark Bank v. First Nat'l Bank*, 738 S.W.2d 922, 924 (Mo.App. E.D. 1987) (citing Southwestern Bell, 534 S.W.2d at 276). Testimony from the attorney stating that he lacked authority is sufficient evidence to meet that burden, assuming the trial court believes it. *Id.* It is up to the trier of fact to decide whether the attorney truly lacked the authority to settle. *Rosenblum*, 745 S.W.2d at 761–62.

The trial court specifically found that nothing in the email correspondence "indicat[ed] that [Mr.] Weimer had any limited authority to negotiate and execute a settlement on behalf of his client." Additionally, the trial court found that the collection letters lacked "any indication that the agent (Kramer & Frank) has any limitation on its authority to act for [MBNA]." Apparently, Mr. Weimer's testimony did not convince the trial court that he lacked authority. As discussed previously, there was substantial evidence that the trial court could infer MBNA created apparent authority in Kramer & Frank to settle the cases. Therefore, we will not disturb the ruling of the trial court.

In its second point, MBNA argues that the trial court erred in not limiting the release to pertain to *Parks I* because MBNA made a unilateral mistake. It claims that Missouri law allows rescission of a contract based on unilateral mistake in two circumstances, both of which MBNA advocated to the trial court. A contract may be rescinded based on a unilateral mistake when (1) it would be unconscionable to enforce the contract, or (2) "the other party had reason to know of the mistake." *Lakin*, 88 S.W.3d at 481. An unconscionable agreement is that which involves a strong, gross and manifest inequality. *Ricks v. Mo. Local Gov't Employees Ret. Sys.*, 981 S.W.2d 585, 594 (Mo.App. W.D.1998). "The concept of unconscionability is meant to protect against one-sidedness, oppression, or unfair surprise. The determination of whether the agreement is unconscionable is considered in light of the circumstances existing when the agreement was made." *Ricks*, 981 S.W.2d at 594 (citations omitted).

Missouri courts have afforded little sympathy to a party who "did not understand the consequences of an act." *Lakin*, 88 S.W.3d at 481. "Where the mistake has resulted solely from the negligence or inattention of the party seeking relief, and the other party is without fault, relief should not be granted absent unusual circumstances which would make enforcement of the agreement unjust." *Id.* Absent "fraud, misrepresentation or other unfair dealing a release is not invalid because of a unilateral mistake." *Stahly Cartage Co. v. State Farm Mut. Auto. Ins. Co.*, 475 S.W.2d 438, 441 (Mo.App.1971).

The trial court found no evidence of fraud or deception. Some of the emails refer to a release and/or settlement of all claims. The parties used a Kramer & Frank drafted release. Mr. Weimer is an attorney with nineteen years experience. The trial court found that even a brief skim of the agreement should have clearly revealed the breadth of the release. We agree. MBNA has provided no authority for the notion that Mr. Herron was under any duty or obligation to assure Mr. Weimer had knowledge of all three arbitration awards before signing the agreement. Indeed, using language such as "all claims" in various emails would lead a reasonable person to believe that Mr. Weimer was aware that there was, or at least could be, other claims out there. We find that the evidence and all reasonable inferences therefrom are substantial enough to support the trial court's finding.

## Conclusion

We affirm the confirmation of *Parks II* and *III* as judgments. However, the release agreement is valid and pertains to *Parks I*, *II*, and *III* and is a defense against enforcement of those judgments. We reverse the denial of attorney fees on the breach of contract claim and remand to the trial court to enter judgment in favor of the Parkses and to determine within its

discretion a reasonable amount of attorney fees.

HAROLD L. LOWENSTEIN, P.J., and PAUL M. SPINDEN, J. concur.