NANCY STEFFEN RAHMEYER, P.J.,
concurring.
As noted in the majority opinion, the Smiths, in their first point, challenge the judgment that found Hasty[1] had either actual or apparent authority to “negotiate a binding settlement” of the claim on the Smiths’ behalf because the Smiths neither authorized their attorney to do so, nor agreed to the purported settlement. I commence my analysis with Rule 4-1.2(a), of the Missouri Court Rules.[2] Every attorney in Missouri is aware of this rule:
(a) A lawyer shall abide by a client’s decisions concerning the objectives of representation, subject to Rule 4 — 1.2(c), (f) and (g), and shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client’s decision whether to accept an offer of settlement of a matter.
Rule 4-1.2(a).
It is without question that, in Missouri, an attorney must have express authority to bind his client to a settlement agreement and, conversely, there is no implied authority to settle a client’s claim by the mere fact of an attorney’s employment. Barton v. Snellson, 735 S.W.2d 160, 162 (Mo.App.E.D.1987); Samland v. J. White Transp. Co., Inc., 675 S.W.2d 92, 95-96 (Mo.App.W.D.1984). “[A]n attorney’s implied authority is limited to procedural matters. It does not extend to the surrender of any of the client’s substantive rights.” Barton, 735 S.W.2d at 162.
Settlement decisions have the potential both to benefit and harm the client. Rule 4-1.2(a) requires a client to be in control of the decisions that have the capacity to affect the client profoundly, specifically referencing the decision *708 whether to accept a settlement of the case, so an attorney may not execute a contract that gives the attorney the sole right to settle a case.
In re Coleman, 295 S.W.3d 857, 864 (Mo. banc 2009).
At issue is whether Hasty had actual or apparent authority. To be sure, as stated in the majority opinion, there is case law supporting the proposition that Hasty was presumed to have settlement authority and that the Smiths bore a “substantial burden” to overcome that presumption. The problem is the majority opinion is based upon “the trial judge’s right to ‘disbelieve a client’s testimony about an attorney’s authority.’ ” The judgment must still be based upon evidence. The evidence before the trial court was the written correspondence between the attorneys and the trial testimony by Loomer, Hasty, and the Smiths.
The judgment states:
The substance of the agreement was set forth in Attorney Hasty’s letter of August 22, 2012, addressed to Attorney Loomer, which proposed, inter alia,
“... Great American can consider the loan paid and release the mortgage on the property thereby vesting title in the Smiths free and clear of any interest of the bank or Great American.”
These terms were accepted by Defendants, as was communicated by Attorney Loomer in his letter dated August 24, 2012, to Attorney Hasty. The settlement terms were again confirmed by Attorney Hasty’s letter to Attorney Loomer dated August 30, 2012, referencing recent telephone conversations.
The problem with the court’s analysis is that the terms were not accepted by Loomer.
A more complete portion of the letters indicates several important facts. Defendants made an offer which was not provided to us and, on August 22, 2012, Hasty sent a letter to Loomer:
I’ve had the opportunity to talk to Mr. Smith about the offer that was extended, i.e. Great American would release any claim on the property as long as the Smiths paid the $41,000.00 balance alleged by Great American. That offer is declined.
[[Image here]]
Our legal position, based on my evaluation, is really quite simple. [Hasty set out the Smiths’ legal propositions, including a claim for punitive damages for the actions of Great American.]

Mr. and Mrs. Smith will settle the claim at this point either one of two ways. Either the Smiths can be paid the difference between the $540,000.00 sale price and the amount Great American paid to purchase the loan (approximately $4-1,000.00) or Great American can consider the loan paid and release the mortgage on the property thereby vesting title in the Smiths free and clear of any interest of the bank or Great American.

(Emphasis added.)
An analysis of this letter makes it clear, first, that Hasty felt obligated to speak to Mr. Smith, that he did speak to Mr. Smith, and that the initial offer was declined. Hasty made no reference to speaking with Mrs. Smith. He either inadvertently omitted her from the letter or had no conversation with her or did not feel it was necessary to converse with her. His letter, then, was a rejection of Defendants’ offer and a proposed counter-offer. Loomer, on behalf of Defendants, responded to that counter-offer on August 24, 2012:
This will acknowledge receipt of your letter of August 22, 2012. I have discussed the same with my clients as well as the attorneys representing Great *709 American. Great American is willing to consider the loan paid and will release the mortgage on the property thereby vesting title in the Smiths free and clear of any interest of the bank or Great American. Each party will be responsible for attorney’s fees and costs incurred, and the terms of the settlement will be confidential. I will circulate to you, Scott Kreamer, and Jeff Love those releases for review.
(Emphasis added.)
What is clear from this correspondence from Loomer is that the attorneys for Defendants also felt the need to discuss the offer with their clients, that they did discuss the offer with their clients, and that they were willing to accept the second option that had been suggested, with the additional terms of each paying their own attorney’s fees and costs and that it be a confidential settlement.[3] Although Loom-er testified that he considered this letter as an acceptance of the Smiths’ offer and the court found it to be a contract acceptance, “[a] contract does not exist without a definite offer and a mirror-image acceptance.” Volker Court, LLC v. Santa Fe Apartments, LLC, 130 S.W.3d 607, 611 (Mo.App.W.D.2004) (internal quotations omitted). “As a general common law principle, for a contract acceptance to be effective it must be positive and unambiguous.” Katz v. Anheuser-Busch, Inc., 347 S.W.3d 533, 545 (Mo.App.E.D.2011) (internal quotations omitted). Defendants’ letter of August 24th was a rejection of the offer and a proposed counter-offer. Furthermore, Loomer indicated he would circulate releases for review by all Defendants and Hasty.
Clearly, then, the trial court’s legal conclusion that the offer was accepted on August 24, 2012, was a misapplication of the law.[4] Hasty testified that his August 22nd letter “was my understanding of my authority from Mr. Smith.” The other evidence relied upon by the trial court and the majority opinion was an email from Loomer dated August 27, 2012:
Paul,
Per our telephone discussion this morning and the email I sent to you last week, we have a settlement. We will get you the proposed settlement documents for you and Scott to review.
(Emphasis added.) The August 27, 2012 e-mail stated that, per a phone call, the parties had a settlement; however, the email references a “proposed settlement document” for review. The additional terms suggested by Defendants were not addressed in the email. The court must look to the intention of parties as expressed or manifested in their words or acts. Arndt v. Beardsley, 102 S.W.3d 572, 575 (Mo.App.S.D.2003). Loomer testified:
[Co-counsel for Defendants Herkert and Stolar Partnership, LLP]: And that was the e-mail in which — or the telephone discussion that you had with regard to transmittal and circulation of the settlement documents?
[Loomer]: Right. In my letter I added — the original letter that’s Exhibit No. 1 I had added that each pay their own attorney fees, costs. That was not part of Paul’s original letter so I wanted to make sure that there was no issue with regard to, you know, some counteroffer.
So, we communicated, we talked about it that morning. He said his clients *710 were on board[.] ... So I sent out the settlement documents for him and Scott Kreamer on behalf of America to review.
Loomer testified that he was told that Hasty’s clients were “on board,” however, Hasty and each of the Smiths testified there had been no verbal communication between either of the Smiths and Hasty about the additional settlement agreement terms after the discussion of Defendants’ first offer and the Smiths’ counter-offer. Although Hasty testified he sent a “blind carbon copy” of all the letters that were exchanged to the address he had in Kansas for the Smiths,[5] there is nothing in the letters that would alert the Smiths that Hasty had resolved the issues of costs, attorney’s fees, and confidentiality. Furthermore, as noted in the correspondence from Loomer, the future settlement agreement was called a “proposed” settlement agreement.
To determine whether attorney’s fees and costs were a significant factor in the settlement negotiations, it is important to note that the Smiths, prior to the foreclosure, vehemently protested the foreclosure sale, advising by letter that they were the rightful owners and that there would be significant damages. After the foreclosure sale, Hasty sent a letter to Defendants stating:
You are each hereby notified that claim is made against you. The actions you have taken, together, constitute a conspiracy resulting in conversion, trespass, invasion of privacy, defamation, libel, and probably other torts.
Demand is hereby made that you immediately provide written confirmation that the proceeds of the Trustee’s Sale, in their entirety, are being paid to Carl and Margarita Smith and counsel. This office does have an attorneys’ lien on this claim.
The Smiths, through attorney Hasty, indicated that they believed they had been the victims of several torts. Presumably, Hasty had a good faith basis to bring suit on each of these claims. Again, even if the court disregarded the testimony of the Smiths that attorney’s fees were an important term of the settlement, attorney’s fees were apparently important to Hasty.
Hasty obtained both of the parties’ signatures on his “contingent contract.” He sent notice of his contingency contract during preliminary negotiations with Loomer. After the Smiths notified Hasty that they did not accept the terms of the settlement agreement, Hasty again, by letter to Defendants, claimed to have a “contingent fee agreement” and claiming a lien on any recovery by Mr. and Mrs. Smith “[t]hat includes recovery of the property.” Hasty testified that he received a call from a “public adjuster” that had signed a contract with either Mr. Smith or Mrs. Smith or both of them. He did not know which but the adjuster was looking for a lawyer; he talked with Mr. Smith by phone and drafted the letter given by Mr. Smith to Mr. Herkert prior to the foreclosure. He then met Mrs. Smith at the hotel where she worked when she signed the attorney’s contract but never discussed the case with her. He had both parties sign the contract even though he did not meet Mr. Smith at all until the date that was scheduled for the Motion to Enforce the Settlement hearing. The representation contract was not admitted into evidence at trial.
*711 The parties continued to negotiate regarding other terms in the proposed settlement agreement. In fact, in one letter, dated August 30, 2012, Hasty, after stating concerns about the way the document was drawn, stated, “However, all that being said, if Liberty Bank is willing to execute the document, I believe Mr. and Mrs. Smith will agree.” (Emphasis added.)
An analysis of the responses from Hasty to the “proposed” settlement agreement indicates several complaints about the proposed agreement. Most important, however, in the response of August 30, 2012, is the statement, “I believe Mr. and Mrs. Smith will agree.” As of August 30, 2012, it had to be clear to Defendants that there was no apparent authority and that there was no settlement because the Smiths were not yet agreeing to it. Hasty was clear in his letter that he recognized that it was the Smiths who needed to agree to the settlement.[6]
If you disregard the testimony by the Smiths that they never authorized a settlement based upon the terms that each party would pay its own attorney’s fees and costs and that the settlement would be confidential and if you disregard the testimony of Hasty that he never discussed anything with the clients other than the offer that was made on August 22nd, there must be some other evidence to base the decision that Hasty had actual or apparent authority to settle the case in the manner of the proposed settlement. The written correspondence shows none. In fact, all of the evidence is to the contrary. Throughout the correspondence, the settlement is referred to as a “proposed settlement.” Even after the letter from Loomer indicating there was a settlement, there is correspondence from Hasty stating he “believed” his clients would agree.
The only evidence the trial court could have relied on to draw the conclusion that the Smiths had agreed to the settlement is the testimony of Hasty AFTER he was notified by the Smiths that they did not agree to the settlement when they received the actual settlement documents. The statement as recited by Loomer is, “Well, my clients have backed out on the settlement. Will no longer settle the case upon the terms that we agreed. And I said, you know, Paul, we’ve got a settlement, and he said, I know it but they’re just — they won’t sign the documents that we agreed upon.” Hasty’s September 18, 2012 letter to Loomer confirms Loomer’s testimony. Neither party asked Hasty any specific questions about when the Smiths had agreed to pay their own attorney’s fees and costs. Further, there were no questions on behalf of Mrs. Smith’s interest in the property separate from her husband’s. The only testimony is to the contrary: the Smiths and Hasty had not spoken after the August 22nd letter was sent to Loomer. There was no discussion of attorney’s fees and costs.[7]
Nevertheless, the Smiths lose in this appeal because of the actions of their attorney and the “presumed authority” of their attorney to settle the case. By his ambiguous letter to Loomer after the Smiths declined to sign the agreement, Hasty made possible the only inference by the trial court that perhaps the Smiths at some point had actually agreed on the *712 issues of attorney’s fees and costs. It is clear from the correspondence that there was no apparent authority. The situation is more complicated by the fact that Hasty then continued to represent the Smiths though he had stated positions contrary to the Smiths’ position. He continued to assert throughout the hearing that he thought he had authority to settle the case.[8]
Hasty continued to represent the Smiths through the first scheduled hearing and made further representations in writing against the Smiths’ interests. At the hearing he testified that his clients’ contention that Mrs. Smith did not agree to the settlement was the first time he even considered the issue of Mrs. Smith’s opinion. As noted, separate counsel representing both Smiths participated at the hearing; however, Hasty then represented both Smiths in this appeal, where the issue of whether there was even a valid settlement was not raised and the deficiencies in the brief are noted in the majority and concurring opinions, which resulted in an impediment to a full resolution of all possible issues.
I return to Rule 4-1.2(a), which states the lawyer shall abide by a client’s decisions concerning the objectives of representation and shall consult with the client as to the means by which they are to be pursued. It is only because of the deference to the trial court that an inference from the clients’ lawyer after the fact can be substantial evidence. Reluctantly, I must concur in the result.

. Hasty represented the Smiths in this appeal but was a witness at the hearing to enforce the judgment.

. All rule references are to Missouri Court Rules (2014), unless otherwise specified.

. This letter comports with the testimony at trial that Loomer indeed discussed the settlement offer with his clients and with the attorney for Great American, James Kreamer.

. However, as noted by the majority opinion, the Smiths, by attorney Hasty, did not challenge that Hasty reached an agreement to settle the dispute.

. Mr. Smith testified he was in Branson and did not receive the correspondence until his return to Kansas; however, even if we accept the inference that he did receive the correspondence, there is nothing in the correspondence that indicates that the terms of costs, attorney’s fees, and confidentiality had been addressed.

. Negotiations or preliminary steps towards the formation of a contract do not satisfy the requisite element of mutuality of agreement. Ketcherside v. McLane, 118 S.W.3d 631, 635 (Mo.App.S.D.2003).

. See Rule 4-1.7(a)(1), Conflict of Interest (“[A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: (1) the representation of one client will be directly adverse to another client[.]”).

. "Because an agent cannot create his own authority, apparent authority must arise from the acts of the principal, not from acts of the agent.” Parks v. MBNA America Bank, 204 S.W.3d 305, 313 (Mo.App.W.D.2006). It is the conduct of the principal (the client) which must cause a third person reasonably to believe that another (the attorney) has the authority to act for the principal. Id. "Apparent authority exists only concerning third parties that believe and have reason to believe that the authority exists.” Id. "Apparent authority may be shown by evidence of the facts and circumstances attending the actions of the parties.” Id. (internal quotations omitted).