# United States Court of Appeals

## For the Eighth Circuit

_____

No. 15-1956

_____

Silgan Containers Corporation

*Plaintiff - Appellee*

v.

Sheet Metal Workers International Association, Local Union No. 2

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: January 13, 2016
Filed: April 15, 2016

_____

Before MURPHY, SMITH, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Silgan Metal Containers Manufacturing Corporation sued Sheet Metal Workers Local No. 2, challenging an arbitration award. The district court granted summary judgment to Silgan. The Union appealed. Having jurisdiction under 28 U.S.C. § 1291, this court affirms in part, reverses in part, and remands.

I.

In 2012, Silgan and the Union began negotiating changes to the collective-bargaining agreement. Article 36 of the agreement outlines a pension-contribution program. In the previous agreement, Article 36 required Silgan to pay $1.98 to an employee's pension account for each hour worked, up to 2,000 hours. During negotiations, Silgan and the Union discussed converting the pension program into a company-wide 401(k) and increasing Silgan's contribution to $2.00 per hour. They did not discuss the 2000-hour cap.

On May 2, 2012, the Union proposed significant revisions to Article 36, omitting the 2000-hour cap. Later that day, Silgan returned the proposal, with some changes, but still without the cap. After receiving Silgan's draft, the Union negotiator asked Silgan's negotiator to explain how Article 36 would work. Silgan's negotiator said, it would "work like it had always worked in the past." The Union's negotiators then decided "to not mention" the removal of the 2000-hour cap. On May 23, Silgan sent its final and best offer, without the 2000-hour cap. The Union sent this version to its members for ratification, after which Silgan and the Union proofread the draft. On June 13, Silgan's negotiator requested several edits, again without mentioning the cap. In the final agreement, Silgan contributes $2.00 per hour worked.

The Union pursued a grievance to arbitration, seeking to enforce Article 36 as written—without a 2000-hour cap. Silgan argued that it did not agree to contribute for hours worked above 2,000 per year, alleging theories of fraud-in-the-inducement, unilateral mistake, and mutual mistake. It also challenged the arbitrator's authority to hear the dispute. Siding with the Union, the arbitrator directed Silgan to make pension contributions for each hour worked. Silgan sued to vacate the award and for a declaratory judgment that the elimination of the 2000-hour cap was the result of mistake. The Union sought to enforce the arbitration award. Both parties filed for

summary judgment. The district court granted Silgan's motion, vacating the award and rescinding Article 36 because of Silgan's unilateral mistake.

This court reviews de novo the grant of summary judgment. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Id.*

## II.

The Union maintains that the arbitrator had authority under the agreement to decide Silgan's claims of mistake. Disagreeing, the district court vacated the arbitration award. "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986). A court may order arbitration "only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287, 297 (2010).

Arbitration is "a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc.*, 475 U.S. at 648. *See also* **Sheet Metal Workers Local No. 2 v. Silgan Containers Mfg. Corp.**, 690 F.3d 963, 966 (8th Cir. 2012) ("With the exception of 'matters that the parties specifically exclude, all of the questions on which the parties disagree . . . come within the scope of the grievance and arbitration provisions of the collective agreement.'" (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581 (1960))). The agreement grants the arbitrator only limited authority:

> **Section 32.4** The authority of the arbitrator shall be limited
> to the interpretation of this Agreement and to the

arbitration of grievances and disputes which may arise as to the meaning and interpretation of this Agreement. The arbitrator shall, in each case, be bound by the provisions of this Agreement and shall not have the authority to change, amend, or modify the provisions of this Agreement.

The arbitrator's power is thus confined to "the narrow function of interpreting, construing, and applying whatever provisions of the agreement are conceded by both parties to be valid. . . ." *International Union of Operating Eng'rs, No. 139 v. Carl A. Morse, Inc.*, 529 F.2d 574, 579 (7th Cir. 1976) (rejecting the application of this narrow interpretation to a more broadly-worded agreement—requiring arbitration of "[a]ll grievances, disputes or complaints of violations of any provisions" of the agreement). This accords with the general rule that "where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Granite Rock Co.*, 561 U.S. at 296.

Silgan challenged the formation of the contract, arguing that Article 36 is invalid. This question of validity and formation is not within the scope of the arbitration agreement. Because the arbitrator lacked authority to decide this issue, the district court did not err in vacating the award.

III.

The Union argues that the district court erred in applying Missouri law and rescinding Article 36. Federal law applies to suits under § 301 of the Labor Management Relations Act. *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 456 (1957). This court looks to Missouri law if "compatible with the purposes of the LMRA." *T.E.A.M. Scaffolding Sys., Inc. v. United Brotherhood of Carpenters & Joiners*, 29 Fed. Appx. 414, 416 (8th Cir. 2002), *citing Id* at 456-57.

Freedom of contract is the "fundamental principle" of federal labor law. *See* ***H.K. Porter Co. v. NLRB***, 397 U.S. 99, 107 (1970). *See also* ***Laborers Dist. Council of Minn. & N.D. v. NLRB***, 688 F.3d 374, 379 (8th Cir. 2012). This means sophisticated parties have the right "to make a bad bargain, or to relinquish fundamental rights." ***Purcell Tire & Rubber Co. v. Executive Beechcraft, Inc.***, 59 S.W.3d 505, 508 (Mo. banc 2001). "The character and quality of negotiations do not vary the terms of a written contract between sophisticated businesses." ***Utility Service & Maintenance, Inc. v. Noranda Aluminum, Inc.***, 163 S.W.3d 910, 914 (Mo. banc 2005). Missouri courts "have afforded little sympathy to a party who did not understand the consequences of an act." ***Parks v. MBNA Am. Bank***, 204 S.W.3d 305, 314 (Mo. App. 2006) (internal quotations omitted).

Silgan argues for rescission based on unilateral mistake. In Missouri, "rescission on the basis of unilateral mistake . . . is warranted only in exceptional circumstances." ***Nitro Distributing, Inc. v. Dunn***, 194 S.W.3d 339, 349 (Mo. banc 2006). A contract may be rescinded if "(1) it would be unconscionable to enforce the contract, or (2) the other party had reason to know of the mistake." ***Parks***, 204 S.W.3d at 314 (internal quotations omitted). Silgan does not assert unconscionability. Rather, it maintains that the Union had reason to know it was mistaken about the 2000-hour cap. According to Silgan, the Union negotiators decided "to not mention" the removal of the 2000-hour cap after hearing Silgan's negotiator say the revised Article 36 would work "like it had always worked in the past."

However, Silgan's mistake cannot result "from the want of such care and diligence as are exercised by persons of reasonable prudence under the same circumstances." ***State ex rel. State Highway Comm'n v. DeMarco***, 422 S.W.2d 644, 648 (Mo. 1968). Silgan is a sophisticated party. It knew these were arm's length

negotiations.[1]  Yet, it never complained about the removal of the 2000-hour cap, despite numerous opportunities to do so.  Its own counter-proposal (May 2) did not include the 2000-hour cap, its final and best offer (May 23) did not include the 2000-hour cap, and its proofreading edits (June 13) did not mention the 2000-hour cap.  The Union did nothing to prevent Silgan from reading the contract.  *Cf.* ***State ex rel. PaineWebber, Inc. v. Voorhees***, 891 S.W.2d 126, 130 (Mo. banc 1995) ("Where a competent contracting party has a reasonable opportunity to know about the contract by reading it, statements by the other party (that do not prevent reading) are not usually a basis to void assent to the whole contract.").  At worst, the Union remained silent about the 2000-hour cap.  But, Silgan has provided "no authority for the notion that [the Union] was under any duty or obligation to assure [Silgan] had knowledge" of the content of the agreement.  ***Parks***, 204 S.W.3d at 314.  "Where the mistake has resulted solely from the negligence or inattention of the party seeking relief, and the other party is without fault, relief should not be granted. . . ." ***Id.***

The district court erred in granting summary judgment to Silgan and rescinding Article 36.

\* \* \* \* \* \* \*

The judgment is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

_____

---

[1] Indeed, while negotiating this CBA, Silgan was litigating about a prior CBA with this very Union in federal court. ***Sheet Metal Workers Local No. 2***, 690 F.3d at 963.